IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Leanora Nelson, Jean Nelson Lumsby, and Selena Nelson Cecchini as Rosalind Nelson's Natural Daughter and Heir at Law, | Civil Action No. 9:11-1184-SB-MGB |
| Plaintiffs, | |
| v. | **ORDER** |
| Levy Center, LLC, | |
| Defendant. | |
| Levy Center, LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| The Law Offices of Horace Jones, Esq.; Horace Jones; and the Wilcy R. Nelson Family, LLC | |
| Third-Party Defendants. | |

This matter is before the Court upon Defendant Levy Center, LLC's ("Defendant" or "Levy Center") Motion to Enforce Written and Signed Settlement Agreement. (Dkt. No. 208.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

**FACTUAL BACKGROUND**

This case has quite a long history. Plaintiffs Leanora Nelson, Jean Nelson Lumsby, and Selena Nelson Cecchini filed the instant action against Defendant on May 17, 2011. (Dkt. No. 1.) Plaintiffs state that they bring the action "to compel determination of claim" to certain real property

located in Jasper County, South Carolina. (*See* Dkt. No. 1 at 3 of 16.)¹ Plaintiffs assert that Defendant "is the corporate entity to which Horace A. Jones, Jr., fraudulently and without any legal authority" conveyed their property on September 16, 2005. (*Id*. at 4 of 16.) Plaintiffs allege the conveyance of their property to Defendant was done without their knowledge or consent; they contend they "never wanted" to sell this property "which had/has been in [their] family since . . . 1870." (*Id*.) According to Plaintiffs, Defendant paid $600,000 to Horace Jones on September 16, 2005, but they "did not receive any of the money paid by the Levy Center, LLC to Horace Anderson Jones, Jr., Esq." (*Id*.) Plaintiffs state (verbatim),

> Horace Anderson, Jones, Esq., the former attorney for the Nelson family, kept and used the $600,000.00 and failed to disclose to Leanora Nelson, Rosalind Nelson, now deceased, and Jean Nelson Lumsby that he had fraudulently conveyed the property to the Levy Center, LLC without our knowledge or consent and that Horace Anderson Jones, Jr., the crooked lawyer that I retained and paid more the $6,000.00 to quiet title to our heir property sold our property and collected $600,000.00 which he kept and used to buy expensive automobiles and other stuff.

(*Id*. at 4-5 of 16.) Plaintiffs allege that Jones' "fraudulent conduct was not discovered until March 18, 2011." (*Id*. at 5.)

Plaintiffs allege that they "first discovered and suspected" Jones' "fraud and that he had probably conveyed . . . and sold" the Nelson property on March 18, 2011. (*Id*. at 6 of 16.) Plaintiff Leanora Nelson states that after meeting with Jones on March 18, 2011, she "began to research the property records on the internet . . . and discovered" that Jones had forged her name as well as that of her sisters, the other two Plaintiffs in the case *sub judice*, on a quitclaim deed. (*Id*.)

According to Plaintiffs, Defendant "willfully and with full knowledge accepted the conveyance" of the Nelson property "based on a deed from grantor, Wilcy R[.] Nelson Family, LLC on September 16, 2005." (*Id*. at 7.)

Plaintiffs allege that Jones, who Leanora Nelson retained to quiet title to the Nelson property, failed to make Plaintiffs members of the Wilcy R. Nelson Family, LLC. (*Id*.) Plaintiffs allege that

---

¹Plaintiffs describe the at-issue property as follows: Tax Map number 039-0011-001, Tax Map Number 039-00-11-002, and Tax Map Number 039-00-10-006 (hereinafter "Nelson property"). (*See* Dkt. No. 1 at 3 of 16.)

the "deed was executed/signed by Horace A. Jones, Jr. as an 'authorized agent,'" but Jones "is not and was not a member of the Wilcy R. Nelson Family, LLC." (*Id*. at 7-8 of 16.) Plaintiff Leanora Nelson alleges that she "checked the filing records for Wilcy R. Nelson Family, LLC" with the office of the Secretary of State for South Carolina and "found that not one of Wilcy R. Nelson's children are listed as members, only some strangers that [Plaintiffs] know nothing about." (*Id*. at 8.) Plaintiffs also allege that Jones was listed as the authorized agent for service of process with the South Carolina Secretary of State. (*Id*.) Plaintiffs further allege (verbatim),

> Defendant, Levy Center, LLC which is an LLC formed in South Carolina, an LLC with Attorneys on retainer which [Leanora Nelson] discovered or Hunter, Maclean, Exley & Dunn, P.C., especially, Kirby G. Mason Esq., **had direct knowledge and a full understanding, that an "authorized agent" can not convey property in his position as an authorized agent**.

(*Id*.) Plaintiffs allege that Defendant "actually had legal knowledge that Horace A. Jones Jr., who executed the deed as grantor/'authorized agent' did not have the legal authority to convey the Nelson property to the Levy Center, LLC." (*Id*. at 9 of 16.) Plaintiffs complain that on September 16, 2005, Jones "executed the deed as grantor, listing his authority to execute the deed[] as 'authorized agent' of the Wilcy R. Family Nelson, LLC" and "sold [Plaintiffs'] property and stole [Plaintiffs'] $600,000.00." (*Id*.) Plaintiffs assert that Jones "did not have legal authority as a matter of law" to convey the Nelson property because Jones "was not a member of the Wilcy R. Nelson Family, LLC." (*Id*.)

Plaintiffs allege that Defendant "was negligent in the purchase of the Nelson property" when, *inter alia*, it purchased the property "without having a title search done to research the chain of title for the Nelson property." (*Id*. at 10 of 16.) Plaintiffs assert that had Defendant performed a title search, "it would have revealed that Horace A. Jones, Jr., never did the necessary work to quiet the title for the Nelson heir property." (*Id*.)

Plaintiffs state that they seek judgment against Defendant in the amount of $15,000,000 as well as "injunctive relief requiring a return to Plaintiffs" of the Nelson property. (*Id*.) Plaintiffs seek to have the deed dated September 16, 2005 declared void. (*Id*. at 13-14 of 16.)

## **PROCEDURAL BACKGROUND**

In the instant motion, Defendant seeks to enforce a settlement agreement ostensibly reached during their mediation on March 26, 2015. (*See* Dkt. No. 208; Dkt. No. 208-1; Dkt. No. 208-2.) Before a discussion on the merits of Defendant's motion, a review of the case's procedural history is helpful. As noted above, Plaintiffs brought the instant action *pro se*. (*See generally* Dkt. No. 1.) On June 18, 2012, Defendant filed a Motion for Summary Judgment based on the following grounds:

> 1. The Plaintiffs have requested that this Court set aside a deed from The Wilcy Nelson Family, LLC to Defendant. The Plaintiffs were not parties to that deed and do not have standing to seek the relief requested. Therefore, their claim must be dismissed.
>
> 2. The Plaintiffs failed to join necessary parties to this action.

(Dkt. No. 53 at 1 of 5.) On December 13, 2012, Judge Hendricks issued a text order staying the case; that order stated:

> TEXT ORDER granting Defendant Levy Center LLC's motion to stay discovery and trial deadlines. [Doc. 78 .] The Court incorporates, without adopting, the facts of this case, as included in the defendant's motion, by specific reference. Id. Because it indeed appears that the plaintiffs' ability to properly prosecute this present case turns on whether or not the plaintiffs' motion to set aside the Final Order of Partition in Kind, entered in the underlying state court action, is successful, the deadlines and pending motions in this case should be stayed until such time. The Court would not recommend dismissal of the case, as alternatively requested. The parties should give the Court notice within ten (10) days of any relevant adjudication in the state court action. IT IS SO ORDERED.

(Dkt. No. 79.) On March 13, 2014, Judge Hendricks lifted the stay. (Dkt. No. 107.) On April 9, 2014, Judge Blatt denied Defendant's Motion for Summary Judgment. (Dkt. No. 117.)

On May 23, 2014, Judge Hendricks ordered the parties to complete mediation within the specified time frame. (Dkt. No. 132.) On July 24, 2014, Judge Blatt scheduled a bar meeting for August 27, 2014 and jury selection for September 16, 2014. (Dkt. No. 151.) On July 28, 2014, Plaintiffs filed a Motion for Summary Judgment. (Dkt. No. 153.) In an Order filed on July 29, 2014, Judge Blatt ordered the parties to appear in person for a status conference on September 8, 2014

instead of the August 2014 bar meeting. (Dkt. No. 154.) On July 29, 2014, Plaintiff Leanora Nelson filed a Motion for Summary Judgment. (Dkt. No. 158.)

On August 18, 2014, Defendant filed a Motion for Summary Judgment. (Dkt. No. 170.) In an Order filed on August 19, 2014, Judge Blatt cancelled the status conference and continued the case to the following term of court; his Order stated as follows:

> In light of the parties' recently filed motions for summary judgment (Entries 158 and 170), the Court hereby **cancels** the status conference currently scheduled for Monday, September 8, 2014, and **continues** this case to the January 2015 term of court. Thus, the parties do **not** need to appear for the bar meeting on August 27 or for a status conference on September 8.
>
> In addition, pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this matter is referred back to a United States Magistrate for consideration.

(Dkt. No. 172.) At that point, the case was referred to United States Magistrate Judge Wallace W. Dixon. (Dkt. No. 173.)

On August 25, 2014, Judge Dixon issued an Order appointing Nancy Bloodgood, Esquire, to assist Plaintiffs with a settlement conference. (Dkt. No. 180.) Judge Dixon's Order provided as follows:

> The Court hereby appoints Nancy Bloodgood, Esquire, to represent the *pro se* Plaintiffs (Leanora Nelson, Jean Nelson Lumsby, and Selena Nelson Cecchini) solely for the limited purpose of assisting the *pro se* parties in connection with a settlement conference in this case. Appointed counsel shall not be obligated to conduct any discovery, to prepare or respond to any motions, and shall not be responsible for the trial of this case. Even with this limited appointment, counsel may–in her discretion–file any motions she deems beneficial to Plaintiffs.
>
> Appointed counsel may file a motion to end the limited representation of the *pro se* parties within ten days following completion of the settlement conference. Alternatively, appointed counsel may, if desired, enter a full appearance at that time.
> . . .

(Dkt. No. 180.)

On September 15, 2014, the parties filed a Joint Motion to Stay, asking that the instant action be stayed "while they try to resolve this matter through mediation." (Dkt. No. 182.) That motion was

granted, and the matter was stayed while the parties participated in mediation. (Dkt. No. 183; *see also* Dkt. No. 192.)

The matter was mediated on March 26, 2015, and a settlement conference was set before the undersigned for May 13, 2015. (*See* Dkt. No. 201.) That conference was subsequently cancelled, and Ms. Bloodgood filed a Motion to Withdraw as Attorney on May 14, 2015. (Dkt. No. 203; Dkt. No. 205.) On May 20, 2015, Defendant filed the instant Motion "to Enforce Written and Signed Settlement Agreement." (Dkt. No. 208.)

The undersigned held a hearing on Ms. Bloodgood's Motion to Withdraw as Attorney on May 28, 2015; Ms. Bloodgood's motion was granted. (Dkt. No. 218.) The parties were ordered to provide–as soon as possible–the following documents to the Court: (a) the full deposition transcripts of Leanora Nelson and Selena Nelson Cecchini; (b) a copy of the power of attorney or other legal document authorizing an individual to act on behalf of Jean Nelson Lumsby; and (c) a copy of the mutual release. (Dkt. No. 218.) Although the Court has received the full deposition transcripts of Leanora Nelson and Selena Nelson Cecchini, the Court has not received a power of attorney or other legal document authorizing any individual to act on behalf of Plaintiff Jean Nelson Lumsby.

The Defendant's Motion "to Enforce Written and Signed Settlement Agreement" is fully briefed and ripe for consideration. (*See* Dkt. No. 208; *see also* Dkt. No. 213; Dkt. No. 217; Dkt. No. 222; Dkt. No. 231; Dkt. No. 237.)

## **DISCUSSION**

In deciding whether to enforce a settlement agreement, the court (1) "should ascertain whether the parties have in fact agreed to settle the case" and (2) "must discern the terms of that settlement." *Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir. 1991). As stated in *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535 (4th Cir. 2002),

> If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily. Instead, when such factual disputes arise, the court must conduct a plenary evidentiary hearing in order to resolve that dispute, and make findings on the issues in dispute. If a

> district court concludes that no settlement agreement was reached or that agreement was not reached on all the material terms, then it must deny enforcement.

*Hensley*, 277 F.3d at 541 (internal quotation marks and citations omitted).[2]

Defendant attached a "Mediation settlement agreement" to its motion; that agreement is signed by, *inter alia*, Plaintiff Leanora Nelson, Plaintiff Selena Nelson Cecchini, and Attorney Nancy Bloodgood. (*See* Dkt. No. 208-1 at 2 of 3.) The "General terms and conditions" of the agreement provided as follows:

> 1. The parties agree to submit their settlement to the federal district court for its approval.
>
> 2. The parties will execute mutual releases in the regular form.
>
> . . .
>
> 6. Plaintiffs represent that the only additional heir of which they know in regard to the property in question is plaintiff, Jean Nelson Lumsby and plaintiffs further represent and acknowledge they will obtain Ms. Lumsby['s] signature as soon as possible on this mediation settlement agreement and the subsequent mutual releases to be prepared. . . .

(Dkt. No. 208-1 at 1 of 3.) The "specific agreement" section of the "Mediation settlement agreement" stated (verbatim),

> 1. In final and complete settlement of this matter, plaintiff [sic] shall accept from the Levy Center, LLC, the conveyance of the property described generally as Tract 6, containing approximately 32.89 acres to the plaintiffs, or their designee for the total consideration of $280,000.00 by way of quit-claim deed. In conjunction with this conveyance, plaintiffs shall deposit in cash the amount of $10,000.00 as a non-refundable deposit with counsel for Levy Center, LLC, within 60 days of this mediation settlement agreement and shall provide Levy Center, LLC with a loan commitment from a reputable lender within 60 days of the date of this mediation settlement agreement subject to the approval of the Levy Center, LLC, in its sole

---

[2] The undersigned concludes that no hearing is necessary in the case *sub judice*, as the relevant facts are not in dispute. There is no dispute that Leanora Nelson, Selena Nelson Cecchini, and Ms. Bloodgood signed the mediation settlement agreement but that Jean Nelson Lumsby did not. There is no dispute that the mediation settlement agreement called for the signature of Jean Nelson Lumsby; the document had a blank line for Ms. Lumsby to sign as well as a special provision calling for Leanora Nelson and Selena Nelson Cecchini to obtain Ms. Lumsby's signature as soon as possible. There is also no dispute about the language of the order appointing Ms. Bloodgood; she was appointed "solely for the limited purpose of assisting" the Plaintiffs "in connection with a settlement conference in this case." (Dkt. No. 180.) Given all these undisputed facts, a hearing is not necessary.

> discretion, such approval not to be unreasonably withheld or evidence of the availability of the funds necessary to close this purchase a form acceptable to the Levy Center, LLC. If plaintiffs decide to pay the consideration recited in this paragraph in cash, within 60 days of the date of this mediation settlement agreement they shall deposit that cash with their attorney in their attorney's trust account and their attorney shall immediately notify Levy Center, LLC counsel of such deposit or provide Levy Center, LLC with proof of the availability of the cash purchase price.
>
> The purchase of the 32.89 acre tract shall close no later than October 1, 2015. The deposit by Plaintiffs of the $10,000.00 non-refundable deposit shall be credited to the purchase price as set forth above upon the closing of the transaction. This deposit shall be forfeited if the transaction does not close.
>
> 2. If plaintiffs do not meet any of the conditions set forth in the preceding paragraph, plaintiffs shall accept, in final and complete settlement of this matter the conveyance by Levy Center, LLC by quit claim deed of the nine acre tract depicted on exhibit "A" attached hereto. In regard to this conveyance, any surveying costs shall be borne by the title insurance company.

(*Id*. at 1-2 of 3.)

In Levy Center, LLC's memorandum in support of its motion, Levy Center represents that its counsel forwarded a draft mutual receipt and release to Plaintiffs' counsel on April 3, 2015, and on April 9, 2015, Plaintiffs' counsel advised that "plaintiffs refused to sign the mutual receipt and release, but intended to comply with the mediation settlement agreement." (Dkt. No. 208-2 at 3.) Levy Center further states,

> A hearing to present the mediation settlement agreement to the court for approval was scheduled for May 13, 2015. On May 12, 2015, plaintiffs' counsel informed Levy Center's counsel that plaintiff, Jean Nelson Lumsby, would not sign the mediation settlement agreement and all three plaintiffs wished to renege on the March 26, 2015, mediation settlement agreement.

(*Id*. at 3-4.)

Levy Center argues that the settlement agreement is "valid and enforceable" as to Plaintiffs Leanora Nelson and Selena Nelson Cecchini, as they "attended the mediation and signed the mediation settlement agreement." (*Id*. at 5.) As to Plaintiff Jean Nelson Lumsby, Defendant contends the settlement is enforceable because Ms. Bloodgood had actual or "apparent authority to bind Ms. Lumsby to the mediation settlement agreement." (*Id*. at 6.) Defendant

8

further contends that "[t]he signing plaintiffs, Ms. Nelson and Ms. Cecchini, also had apparent authority to act on behalf of and bind Ms. Lumsby to the settlement agreement they signed." (*Id.* at 7.) Finally, Levy Center asserts that the doctrine of promissory estoppel applies "[a]s a further basis to enforce the mediation settlement agreement." (*Id.*)

Plaintiffs filed several documents responsive to Defendant's motion. In one such filing, Plaintiffs Leanora Nelson and Selena Nelson Cecchini stated that Plaintiff Jean Nelson Lumsby's daughter "has the Power of Attorney to handle her mother's money matters." (Dkt. No. 213 at 1 of 1.) In another filing, Plaintiffs Leanora Nelson and Selena Nelson Cecchini state,

> My sister and I are nearly 80 years of age, and we-Nelsons have been fighting this case for over four (4) years. The first time my niece and I met attorney Lang was on the date of the mediation conference. *Attorney Lang prepared the two (2)-page Mediation Settlement Agreement.* We did not have my sister Jean Lumsby's signature on the mediation agreement, which was required as per paragraph six (6), as she is listed as one of the three heirs. . . .

(Dkt. No. 217 at 2 of 3.) Ms. Nelson and Ms. Cecchini further state,

> Clearly, there is no way the Court can enforce the Mediation Settlement Agreement. The Court cannot enforce a *mediation agreement* that is legally incorrect. Clearly, the Jasper County Court of Common Pleas, Final Order Partition In Kind, dated 9/4/05 filed 9/7/05 made Henry Harris and Quanta Gibbs, our kin and heirs to our property. This is one of the major wrongs that we have been trying to undo these pas[t] four (4) years in Court. . . . This blatant case of fraud would not have gone forward, had the title company done its job properly.

(*Id.* at 3 of 3.)

The undersigned recommends denying Defendant's Motion "to Enforce Written and Signed Settlement Agreement." (Dkt. No. 208.) "[T]he court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of the agreement." *Hensley*, 277 F.3d at 540 (citation omitted). "In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009) (citations omitted); *see also Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001) (finding enforcement of the terms of a settlement agreement is a matter of contract law). "South Carolina

9

common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential elements and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) (emphasis in original) (citing *Hughes v. Edwards*, 265 S.C. 529, 220 S.E.2d 231 (1975)). "The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Roberts v. Gaskins*, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997) (citation omitted).

It is undisputed that Plaintiff Jean Nelson Lumsby did not sign the mediation settlement agreement. Accordingly, she herself did not accept the mediation settlement agreement. Defendant does not contend otherwise, but argues that she is bound because Ms. Bloodgood "had actual authority to bind plaintiffs . . . to the mediation settlement agreement" as well as "apparent authority to bind Ms. Lumsby to the mediation settlement agreement." (Dkt. No. 208-2 at 6 of 9.) Respectfully, the undersigned disagrees. In *Arnold v. Yarborough*, 281 S.C. 570, 316 S.E.2d 416 (Ct. App. 1984), the attorneys agreed to settle the case on behalf of their respective clients, and the defendant Yarborough then refused to carry out the terms of the settlement. At a hearing on the motion, the plaintiff introduced into evidence the letters exchanged by the attorneys, but the defendant testified "he never authorized his attorney to settle the case on the terms provided by the[] letters." *Arnold*, 281 S.C. at 571, 316 S.E.2d at 417. The trial judge entered judgment in favor of the plaintiff as per the settlement; the defendant appealed. The South Carolina Court of Appeals affirmed, stating,

> Yarborough first argues the court erred in entering judgment against him because he never received copies of the letters exchanged between the attorneys and never gave his attorney the authority to settle the case on the terms reached. We reject this argument.
> It is undisputed that Yarborough's attorney was representing him and acting on his behalf when he agreed to the terms of settlement. Acts of an attorney are directly attributable to and binding upon the client. *Clark v. Clark*, 271 S.C. 21, 244 S.E.2d 743 (1978). Absent fraud or mistake, where attorneys of record for a party agree to settle a case, the party cannot later repudiate the settlement. *Poore v. Poore*, 105 S.C. 206, 89 S.E. 569 (1916). *Cf. Wilson v. N.E. Isaacson of Georgia, Inc.*, 139 Ga.App. 582, 229 S.E.2d 29 (1976) (absent fraud, agreement by an attorney to dismiss pending case held binding on client even though client did

> not know of agreement); *Lennon v. Aeck Associates, Inc.*, 157 Ga.App. 294, 277 S.E.2d 289 (1981) (agreement to settle by exchange of letters between attorneys held binding where court relied on Georgia statute containing provisions comparable to South Carolina Circuit Court Rule 14).
>     In *Ex parte Jones*, 47 S.C. 393, 25 S.E. 285 (1896), Jones sought relief from a judgment in foreclosure on the ground his attorney was mistaken as to the amount of liens upon the property and the price the property would bring. Our Supreme Court held there is a vast distinction between the acts of an attorney within his general authority in a matter not in court and his acts during the conduct and progress of a suit in court. There, the court stated:
>> ... the employment of an attorney in a particular suit implies his client's assent that he may do everything which the court may approve in the progress of the cause. Upon this distinction in a large measure rest the certainty, verity, and finality of every judgment of a court. Litigants must necessarily be held bound by the acts of their attorneys in the conduct of a cause in court, in the absence, of course, of fraud. *Id*. at 397, 25 S.E. at 286.
>
>     *Ex parte Jones* is clearly applicable in the instant case where an action was pending in court. *Cf. Manufacturer's Hanover v. Mills*, 281 S.C. 374, 315 S.E.2d 377 (1984) (attorney has implied or apparent authority to confess judgment in the other party's favor where there is an action pending and the attorney is of record).

*Arnold*, 281 S.C. at 572, 316 S.E.2d at 417.

The case *sub judice* is easily distinguishable from *Arnold* and other similar South Carolina cases. *See, e.g., Motley v. Williams*, 374 S.C. 107, 115, 647 S.E.2d 244, 248 (Ct. App. 2007); *Graves v. Serbin Farms, Inc.*, 295 S.C. 391, 393, 368 S.E.2d 682, 683 (Ct. App. 1988). The relationship between Plaintiffs and Ms. Bloodgood simply was not the typical attorney-client relationship. The Plaintiffs in the instant action represented themselves until–on August 25, 2014, the Honorable Wallace W. Dixon appointed Nancy Bloodgood, Esquire, "***solely*** for the limited purpose of ***assisting*** the *pro se* parties in connection with a settlement conference." (Dkt. No. 180 at 1 (emphasis added).) That Order provided, *inter alia*,

> The Court hereby appoints Nancy Bloodgood, Esquire, to represent the *pro se* Plaintiffs (Leanora Nelson, Jean Nelson Lumsby, and Selena Nelson Cecchini) ***solely*** for the ***limited purpose*** of ***assisting*** the *pro se* parties in connection with a settlement conference in this case. Appointed counsel shall not be obligated to conduct any discovery, to prepare or respond to any motions, and shall not be responsible for the trial of this case. Even with this ***limited appointment***, counsel may–in her discretion–file any motions she deems beneficial to Plaintiffs.
> Appointed counsel may file a motion to end the ***limited representation*** of the *pro se* parties within ten days following completion of the settlement

> conference. Alternatively, appointed counsel may, if desired, enter a ***full appearance*** at that time.

(Dkt. No. 180 (emphasis added).)

Ms. Bloodgood never filed a "full appearance" in this case, and her Motion to Withdraw as Attorney has been granted. (*See* Dkt. No. 205; Dkt. No. 209; Dkt. No. 218.) Plaintiffs did not hire Ms. Bloodgood, nor did they ask the Court to appoint a lawyer. It is also worth noting that Plaintiffs have repeatedly indicated their distrust of attorneys, which is not surprising given their allegations that attorney Horace Jones essentially stole the Nelson property from them. (*See, e.g.* Dkt. No. 231 at 3 of 3.) On the foregoing, the undersigned concludes that Ms. Bloodgood did not have actual or apparent authority to bind Plaintiffs; Ms. Bloodgood's signature on the document does not bind Ms. Lumsby, nor does it bind the other two Plaintiffs.[3]

Defendant also argues that, even if the mediation settlement agreement is not binding as to Ms. Lumsby, it should be enforced as to Plaintiffs Leanora Nelson and Selena Nelson Cecchini because they "attended the mediation and signed the mediation settlement agreement." (Dkt. No. 208-2 at 5 of 9.) The undersigned disagrees. In *Dean v. Dean*, 229 S.C. 430, 93 S.E.2d 206 (1956), the Supreme Court of South Carolina found that an agreement not executed by the respondent, where the face of the agreement "shows that [respondent] was a proposed party thereto and a blank space was prepared for his written signature," was not effective even as to

---

[3]Defendant further argues that Plaintiffs Leanora Nelson and Selena Nelson Cecchini, who did sign the mediation settlement agreement, "had apparent authority to act on behalf of and bind Ms. Lumsby to the settlement agreement they signed." (Dkt. No. 208-2 at 7.) In support of that argument, Defendant states,

> Both [Leanora Nelson and Selena Nelson Cecchini] represented through their attorney that Ms. Lumsby was too ill to travel to Charleston to attend the mediation in person. Both signed the mediation settlement agreement which specifically provided they would obtain the signature of Ms. Lumsby on the mediation agreement as soon as possible, and obtain her signature on the to-be-prepared mutual release.

(*Id*.)

Respectfully, Defendant's argument misses the mark. "Apparent authority ***must*** be established based upon manifestations by the ***principal***, *not the agent*." *R&G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 432, 540 S.E.2d 113, 118 (Ct. App. 2000) (citing *Shropshire v. Prahalis*, 309 S.C. 70, 419 S.E.2d 829 (Ct. App. 1992)) (emphasis added). The actions Defendant cites to support its argument that Leanora Nelson and Selena Nelson Cecchini had the apparent authority to bind Plaintiff Jean Nelson Lumsby to the mediation settlement agreement are not the actions of Jean Nelson Lumsby. "An agency may not be established solely by the declarations and conduct of an alleged agent." *Id*. at 433, 540 S.E.2d at 118 (citing *Frasier v. Palmetto Homes*, 323 S.C. 240, 473 S.E.2d 865 (Ct. App. 1996)). The actions of Leanora Nelson and Selena Nelson Cecchini are not manifestations–by Jean Nelson Lumsby–that Leanora Nelson or Selena Nelson Cecchini had the authority to act on behalf of Jean Nelson Lumsby.

those that did sign the agreement. *Dean*, 229 S.C. at 433, 435-38, 93 S.E.2d at 208-10. In concluding the agreement was "not effective," the court noted "it was the manifest intent of all parties thereto that it would not become effective unless signed by all intended parties. This being a joint contract or undertaking, in the absence of signatures by all intended parties, it cannot be enforced against those who in fact executed it." *Id*. at 438, 93 S.E.2d at 210.

The "mediation settlement agreement" in the case *sub judice* is a joint undertaking. The "mediation settlement agreement" generally speaks in terms of the Plaintiffs as a group. (*See* Dkt. No. 208-1.) Moreover, "mediation settlement agreement" plainly contemplates that the signature of Plaintiff Jean Nelson Lumsby is required; the agreement provides, *inter alia*,

> Plaintiffs represent that the only additional heir of which they know in regard to the property in question is plaintiff, Jean Nelson Lumsby and plaintiffs further represent and acknowledge they will obtain Ms. Lumsby [sic] signature as soon as possible on this mediation settlement agreement and the subsequent mutual releases to be prepared.

(Dkt. No. 208-1 at 1 of 3.) It is undisputed that Ms. Jean Nelson Lumsby never signed the "mediation settlement agreement." Moreover, it makes little–if any–sense to enforce the settlement agreement as to two of the three Plaintiffs. The instant action is about heirs' property that Plaintiffs allege has been in their family since 1870. (Dkt. No. 1 at 4 of 16.) It appears that the Plaintiffs' interest in the property–at least as to some of it–was an undivided one prior to the alleged malfeasance of Horace Jones. Enforcing the settlement as to Leanora Nelson and Selena Nelson Cecchini–but not Jean Nelson Lumsby–would only further complicate an already complicated case.

Finally, Defendant asserts promissory estoppel "[a]s a further basis to enforce the mediation settlement agreement." (Dkt. No. at 7.) Defendant states,

> Plaintiffs unambiguously accepted the court's appointment of Ms. Bloodgood to assist them to settle this case. Ms. Nelson and Ms. Cecchini attended and actively participated in the mediation and agreed to settle the case. Both signed the mediation settlement agreement which included the unambiguous representation they would "as soon as possible" obtain Ms. Lumsby's signature on the mediation settlement agreement and the mutual release. In reliance on these promises and representations, Levy Center's title insurance company, an attendee at the

13

> mediation and a signatory of the mediation settlement agreement, undertook to meet its obligations to Levy Center under the indemnity provisions of its title insurance policy. Plaintiffs should have expected and foreseen Levy Center and the title insurance company would rely on the promises and representations they made before, during, and at the conclusion of the mediation and in the mediation settlement agreement. Finally, Levy Center and the title insurance company will be injured if the mediation settlement agreement is not enforced against plaintiffs. The title insurance company will be forced to pay additional attorney's fees and costs (as it has already had to do regarding this motion) and Levy Center's property and Levy Center will continue to be embroiled in this litigation for an extended period of time, well beyond the October 1, 2015, closing date under the first alternative conveyance provided in the mediation settlement agreement.

(*Id*. at 7-8.)

In *Higgins Construction Co. v. Southern Bell Telephone & Telegraph Co.*, 276 S.C. 663, 281 S.E.2d 469 (1981), the Supreme Court of South Carolina explained the doctrine of promissory estoppel, stating,

> That doctrine holds an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice.

*Higgins*, 276 S.C. at 665, 281 S.E.2d at 470 (citation and internal quotation marks omitted). In order to establish promissory estoppel, Defendant must demonstrate: "(1) a promise with unambiguous terms; (2) reasonable reliance upon the unambiguous promise; (3) foreseeability of the promisee's reliance; and (4) injury sustained in relying on the promise because of the promisor's inconsistent disposition." *Barnes v. Johnson*, 402 S.C. 458, 469, 742 S.E.2d 6, 11 (Ct. App. 2013) (citations omitted).

It is undisputed that Leanora Nelson and Selena Nelson Cecchini signed the mediation settlement agreement, but it is also undisputed that Jean Nelson Lumsby did not sign it. Defendant asserts the "unambiguous promise" that Leanora Nelson and Selena Nelson Cecchini made is that they would "obtain Ms. Lumsby['s] signature as soon as possible on th[e] mediation settlement agreement and the subsequent mutual releases to be prepared." (Dkt. No. 208-1 at 1 of 3.)

14

Defendant is not entitled to enforce the "mediation settlement agreement" via the doctrine of promissory estoppel, as Defendant has not established, *inter alia*, an injury "sustained *in relying on* the promise." *Barnes*, 402 S.C. at 469, 742 S.E.2d at 11 (emphasis added). Defendant cites continued litigation as the "injury sustained in relying on the promise," but such an injury is not sustained *in relying on* the promise. This litigation has been ongoing since 2011; the fact that it may continue is not due to Defendant's alleged reliance on the promise of Leanora Nelson and Selena Nelson Cecchini to obtain Jean Nelson Lumsby's signature. In other words, Defendant's claimed injury is that the status quo continues. Such alleged injury does not support Defendant's claim of promissory estoppel. *See Craft v. S.C. Comm'n for Blind*, 385 S.C. 560, 564-68, 685 S.E.2d 625, 627-29 (Ct. App. 2009) (refusing to apply promissory estoppel to remedy an injury occurring after a blind vendor's reliance upon an unambiguous promise, because the complained of harm resulted independently); *cf. Elmore v. Cone Mills Corp.*, 187 F.3d 442, 446 (4th Cir. 1999) ("The Supreme Court has held that '[an] essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations.'" (quoting *Lyng v. Payne*, 476 U.S. 926, 935 (1986))). Defendant's motion should therefore be denied.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Defendant's Motion to Enforce Written and Signed Settlement Agreement. (Dkt. No. 208) be DENIED.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

October 15, 2015
Charleston, South Carolina

15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).