IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Leanora Nelson, Jean Nelson Lumsby, and Selena Nelson Cecchini as Rosalind Nelson's Natural Daughter and Heir at Law, | ) ) ) ) | Civil Action No. 9:11-1184-SB-MGB |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Levy Center, LLC, | ) ) | |
| Defendant. | ) ) | |
| ———————————————— | ) | **REPORT & RECOMMENDATION** |
| Levy Center, LLC, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| The Law Offices of Horace Jones, Esq.; Horace Jones; and the Wilcy R. Nelson Family, LLC | ) ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| ———————————————— | ) | |

  The Plaintiffs, appearing *pro se*, bring this action for declaratory judgement, to quiet title and void a deed pursuant to New York state law, and negligence.  Under Local Civil Rule 73.02(B)(2) of the United States District Court for the District of South Carolina, pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.  Before the court are the following motions for summary judgment:

1. Defendant Levy Center, LLC's Motion for Summary Judgment (Dkt. No. 170.);

2. Plaintiff Leanora Nelson's Motion for Summary Judgment (Dkt. No. 158.);

3. "Plaintiffs Leonora Nelson Jean Nelson Lumbsy and Selena Nelson Cecchini as Rosalind Nelson's Natural Daughter and Heir at Law" motion for summary judgment (Dkt. No. 153.).

This court has jurisdiction in this case based on the diversity of the parties. Third-Party Defendants the Law Offices of Horace Jones, Esq. and Horace Jones are in default. (Dkt. No. 211.) Third-Party Defendant Wilcy R. Nelson Family, LLC does not appear to have been served.

## **Factual Background**

The Plaintiffs hired attorney Horace Jones ("Jones") to represent them in a quiet title action in 2005.[1] (Dkt. No. 1.) The Plaintiffs, along with two other relatives, filed a declaratory judgment action in state court to quiet title to five parcels of heirs' property located in Jasper County, South Carolina. (Dkt. No. 170-2.) Plaintiff Leonora Nelson alleges that Jones never told her he filed the action, but the Plaintiffs had the understanding Jones would quiet title to the land for them. (Dkt. No. 245 at 58-59.) The quiet title action concluded with a Final Order Partition in Kind Non-Jury Action ("Final Order") issued by Deborah Kane, Special Referee. (Dkt. No. 170-3.) The Defendant in the case at bar was a named defendant in the caption of the Final Order. (Id.) The Final Order gave fee simple ownership of the parcels to the Wilcy R. Nelson Family, LLC ("Nelson LLC"). (Id.) The Nelson LLC was formed by Jones. (Dkt. No. 1 ¶ 27.) The Plaintiffs in the case at bar were not members of the Nelson LLC. (Id.) The

---

[1] Mr. Jones has since been placed under interim suspension by order of the Supreme Court of South Carolina. See In re Jones, 402 S.C. 118, 739 S.E.2d 218 (2013). He was criminally charged in Jasper County for breach of trust with fraudulent intent, value $10,000 or more, in indictment 2014-GS-27-00319. As of the entry of this Report and Recommendation, that indictment is still pending.

Plaintiffs allege their signatures on the operating agreement for the Nelson LLC were forged. (Dkt. No. 185-1 at 20.)  The Final Order relied on quit claim deeds submitted by Jones to the Special Referee for all of the parcels as the basis for giving fee simple ownership to the Nelson LLC.  (Dkt. No. 170-3.)  The quit claim deeds were allegedly executed by the Plaintiffs and two other apparent heirs, Quanta Gibbs and Henry Harris.  (Id.)  The Plaintiffs allege that Quanta Gibbs and Henry Harris were not heirs with any interests in the parcels and may be entirely fictitious.  (Dkt. No. 185-1 at 4.)  The Final Order was filed with the Jasper County Clerk of Court on September 7, 2005.  (Dkt. No. 170-3.)  The Plaintiffs state that Jones never provided them with a copy of the Final Order.  (Dkt. No. 245.)

Following the Final Order, three of the parcels owned by the Nelson LLC were sold to Levy Center in a deed ("Levy Deed") recorded on September 26, 2005.  (Dkt. No. 170-9.)  Levy Center paid $600,000.00 for the property in an arm's length transaction.  (Id.)  Jones signed the Levy Deed conveying the property as an "Authorized Agent" for the Nelson LLC.  (Id.)  At the closing, Jones presented a consent form signed by the Plaintiffs, Quanta Gibbs and Henry Harris authorizing Jones to sign the closing documents.  (Dkt. No. 170-8.)  The Plaintiffs contend their signatures on this document were forged.  (Dkt. No. 185-1 at 33.) The Plaintiffs were never notified by Jones of the sale.  (Id. at 28.)

Throughout the quiet title action and subsequent sale of three parcels to Levy Center in 2005, the Plaintiffs allege Jones kept them in the dark as to what he was actually doing with the Plaintiffs' case.  The Plaintiffs allege they did not discover that Jones had obtained the Final Order and then sold land to the Levy Center until 2011.  (Dkt. No. 245 at 153.)  Despite not discovering Jones' untoward actions until 2011, the Plaintiffs did have some suspicions

3

regarding their case as early as 2006, but continued to trust Jones as their lawyer.  Plaintiff
Leonora Nelson testified that her "first notice that something might be amiss" was "when [Jones]
stopped paying the taxes."  (Dkt. No. 245 at 76.)  Mr. Jones' law office purportedly paid the
taxes due in 2005 and 2006 on the three parcels that he had sold to Levy Center.  (Dkt. No. 185-1
at 33; Dkt. No. 245 at 73, 91-92.)  The Plaintiffs paid property taxes on the remaining two
parcels in 2005 through 2006 and all of the parcels from 2007 through 2010.  (Dkt. No. 185-1 at
33; Dkt. No. 245 at 73, 91-92.)  In 2006, Leonora Nelson received tax records for the parcels that
stated Levy Center was the owner of the property.  (Dkt. No. 245 at 69.)  Leonora Nelson was
told by the tax assessor's office in Jasper County that the Levy Center owned the property and
had a mailing address in Savannah.  (Dkt. No. 245 at 89.)  When questioned by Leonora Nelson,
Jones explained to her that the Levy Center was holding the property for tax purposes and it
related to new addresses being assigned in the area.  (Dkt. No. 245 at 69-70.)  Leonora Nelson
found it "odd" that the Levy Center had a Georgia address.  (Dkt. No. 245 at 104.)

In 2005 or 2006, Jones proposed to the Plaintiffs that he could sell two acres to pay off
Quanta Gibbs' and Henry Harris' interests in the property.  (Dkt. No. 245 at 66-67.)  Leonora
Nelson opposed the property sale, but stated if Jones sold two acres to "not touch" the land on
"the highway."  (Dkt. No. 245 at 66-67.)  Jones later told her he sold a "couple" acres enabling
him to pay the taxes on the land and could give the Plaintiffs money from the proceeds of the
sale.  (Dkt. No. 245 at 70-71.)  Leonora Nelson testified that she checked the acreage following
the alleged sale when she resumed paying taxes on all the parcels in 2007 and the total acreage
had not changed for the parcels.  (Dkt. No. 245 at 73.)  Rather than becoming suspicious of the

alleged sale, Leanora Nelson was pleased with Jones for being able to sell land without reducing the acreage the Plaintiffs owned.  (Dkt. No. 245 at 73.)

Jones retained control of the Nelson LLC checking account.  The Plaintiffs accepted and directed the issuance of checks from the Nelson LLC account for several expenses.  The checks were signed by Jones.  The Plaintiffs accepted checks from the account in 2006 to pay for weddings and other expenses totaling approximately $18,000.00.  (Dkt. No. 245 at 103; 138.)  A check was issued out of the Nelson LLC account to an attorney in Washington D.C., Cheryle Fells, to research the quiet title action and heirs' property law in federal courts related to the Plaintiffs' 2005 quiet title action.  (Dkt. No. 245 at 135-136.)  This check in the amount of $3000 was issued at the behest of Leanora Nelson on October 11, 2006.  (Dkt. No. 245 at 135-138.)  Leanora Nelson hired Ms. Fells "because [Leanora Nelson] was becoming concerned about what was going on."  (Dkt. No. 245 at 137.)  Another check was issued from the Nelson LLC account to Wilmer Grier in the amount of $3000 to pay for a personal matter for Rosalind Nelson.  (Dkt. No. 245 at 139-40.)

In early 2007, Leanora Nelson understood that all five parcels were owned by Nelson LLC with three parcels being held by Levy Center.  (Dkt. No. 245 at 95.)  Leanora Nelson further understood "roughly two acres of one of the parcels" had been sold by Jones.[2]  (Id.) Leanora Nelson received tax notices for the remaining properties that had not been sold to Levy Center in late 2006 or early 2007.  (Dkt. No. 245 at 91-92.)  When she did not receive tax notices for the parcels owned by Levy Center, she called the tax assessor's office about her missing notices.  The missing notices raised "red flags," but she accepted Jones' explanation that the

_____

[2] Jones had already sold three entire parcels to Levy Center without the Plaintiffs' knowledge. (Dkt. No. 170-9.)

5

parcels were in the name of Levy Center for tax purposes.  (Dkt. No. 245 at 93.)  In 2007

Leonora Nelson sought out a phone number for Levy Center from the tax assessors' office to

verify Jones' representations, which she "wanted to believe." (Dkt. No. 245 at 158-9.)  She was

not successful in getting the phone number.  (Id.)  At some point in time, Leonora Nelson had a

friend in New York perform internet research into the Levy Center and business entities formed

by Jones.  (Dkt. No. 245 at 98-100.)  Leonora Nelson felt the results of the research supported

Jones' claims he was setting up a real estate "consortium" under the name Levy Center.  (Id.)

According to the deposition testimony of Leonora Nelson and Selena Nelson Cecchini,

the Plaintiffs did not recognize the apparent frauds and misrepresentations by Jones until 2011

when Jones came to New York and told Plaintiffs he had "repurchased" their land for them from

Levy Center.  (Dkt. No. 245 at 145-46.)  He presented the Plaintiffs with a $10,000.00 check that

they kept and cashed.  (Id.)  Suspicious of his story, the Plaintiffs came to South Carolina and

determined Jones had surreptitiously sold three parcels of their land to Levy Center.  (Dkt. No.

245 at 149; 153.)  Jones kept the proceeds for himself.  (Dkt. No. 1 at 5.)

The Plaintiffs initially filed suit in the Eastern District of New York, but the case was

dismissed for lack of personal jurisdiction over Levy Center.  (Dkt. No. 185-1 at 29.) The

Plaintiffs then commenced this action on May 17, 2011.  (Dkt. No. 1.)  On July 27, 2012, the

Plaintiffs filed in state court a "Motion to Reopen and Vacate" the Final Order.  (Dkt. No. 170-

14.)  In the motion, the Plaintiffs raised many issues related to Jones' and other individuals'

fraud and actions that had caused the Plaintiffs to be unaware the parcels had been sold to Levy

Center. (Id.)  The Special Referee held a hearing on the motion on March 5, 2013. (Dkt. No. 185-

2.)  The Special Referee denied the Plaintiffs' motion in her Order ("2013 Order") dated April

6

12, 2013 based on three grounds.  (Dkt. No. 185-2 at 17.)  The Special Referee ruled that the motion was untimely under Rule 60(b), SCRCP.  (Id. at 19-20.)  The Special Referee held that the Plaintiffs' motion was barred by S.C. Code § 15-67-90, which places a three year statute of limitations on any actions seeking to challenge a decree or judgment quieting title to land.  (Id. at 20-21.)  Finally the Special Referee found that the motion was barred by the doctrine of laches.  (Id. at 21-22.)  The Special Referee found that the Plaintiffs were aware of much of the evidence used to support their allegations of fraud in 2005 and 2006, yet they waited until 2011 to seek to reopen their case and vacate the Final Order.  (Id.)

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## Analysis

1.  Defendant Levy Center, LLC's Motion for Summary Judgment (Dkt. No. 170.)

Based on the following analysis, the undersigned recommends Defendant Levy Center, LLC's Motion for Summary Judgment (Dkt. No. 170) be granted.

a. Real Property Claims

i. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine precludes this court from performing 'review of adjudications of the state's highest court [and] also the decisions of its lower courts.'" Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 857 (4th Cir. 2001) (quoting Jordahl v. Democratic Party, 122 F.3d 192, 199 (4th Cir.1997)). "The *Rooker-Feldman* bar extends not only to issues actually decided by a state court but also to those that are 'inextricably intertwined with questions ruled upon by a state court.'" Id. (quoting Plyler v. Moore, 129 F.3d 728, 731 (4th Cir.1997)). Claims are "inextricably intertwined" when "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Pyler, 128 F.3d at 731. The *Rooker-Feldman* doctrine is a "narrow" doctrine only precluding "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine is a jurisdictional bar to a lower federal court hearing a case. Safety-Kleen, Inc. (Pinewood), 274 F.3d at 857. Only the Supreme Court of the United States has been given the power by Congress "to exercise appellate authority 'to reverse or modify' a state-court judgment." Exxon Mobil Corp., 544 U.S. at 284 (quoting Rooker v. Fid. Trust Co., 263 U.S. 413, 415 (1923)).

In the case at bar, the Plaintiffs are seeking to void the Final Order issued by the state court. The *Rooker-Feldman* doctrine bars this court from exercising subject-matter jurisdiction over the Plaintiffs' claims for declaratory judgment, quiet title, and to void the quit claim deeds. The Final Order was a final judgment issued by the state court. The Final Order was not timely challenged or appealed. The only challenge to the Final Order occurred when the Plaintiffs filed their "Motion to Reopen and Vacate" on July 27, 2012, almost seven years after the Final Order was issued. (Dkt. No. 170-14.) The 2013 Order held that the Plaintiffs' motion to vacate the Final Order was untimely under the rules. (Dkt. No. 185-2 at 17.) The Final Order was filed and executed by the Jasper County Clerk of Court to quiet the title to the affected parcels. Some of the parcels were later sold to Levy Center. (Dkt. No. 170-3.)

The Plaintiffs' causes of action include a quiet title action under New York state law and declaratory judgment. Any action brought seeking to determine rights to real property is controlled by the law of the situs of the property. In re French, 440 F.3d 145, 150 (4th Cir. 2006); United States v. Real Prop. & Premises Known as 349 S. 4th Ave., Mount Vernon, N.Y. 10550, 792 F. Supp. 36, 39 (E.D. Va. 1992); In re Ellis' Estate, 30 Misc. 2d 225, 228, 139 N.Y.S.2d 640, 644 (Sur. 1954) ("the disposition of real property is controlled by the law of its situs"). The Plaintiffs' claims are controlled by South Carolina law because all of the real property at issue is in South Carolina.

The relief sought by the Plaintiffs strongly weighs in favor of the application of the *Rooker-Feldman* doctrine. The Plaintiffs seek, among other relief, "restoration of the status quo," "permanent mandatory injunctive relief requiring a return to [P]laintiffs of their real property," and that the parcels now owned by the Levy Center "be returned to Plaintiffs." (Dkt.

No. 1 at 12-13.)  The relief sought by the Plaintiffs is for the Final Order to be voided and property given to the Plaintiffs.  To grant the relief sought, this court would necessarily have to rule the Final Order was void.  The quiet title action in state court precludes this court from hearing the Plaintiffs' case seeking to undo it.  See Lanier v. Branch Banking & Trust Co., No. 3:12-628-MBS-SVH, 2013 WL 4692586 (D.S.C. May 30, 2013) report and recommendation adopted sub nom. Lanier v. Branch Bank & Trust Co., No. 3:12-0628-MBS, 2013 WL 4696138 (D.S.C. Aug. 29, 2013) (holding the Plaintiffs' challenge to a foreclosure and judicial sale of real estate in federal court was barred by the *Rooker-Feldman* doctrine); Borkowski v. Fremont Inv. & Loan of Anaheim, Cal., 368 F. Supp. 2d 822, 827 (N.D. Ohio 2005) (holding the district court did not have jurisdiction under the *Rooker-Feldman* doctrine where a plaintiff sought title to real property in federal court by requesting a quiet title action in state court be voided due to the defendants' fraud).  The Final Order issued by the state court ruled on the Plaintiffs' quiet title action and declaratory judgment action.  The Plaintiffs are now bringing the exact same causes of action in federal court.  The Plaintiffs are seeking to re-litigate the same claims that the state court ruled on in 2005.  For the Plaintiffs to succeed on these claims, this court would have to rule that the state court wrongly decided the issues before it.  The Plaintiffs now seek to have the status quo restored to the time before the Final Order was entered and parcels were subsequently sold to Levy Center.  Any ruling by this court on the Plaintiffs' claims would necessarily void the state court's actions. The quiet title and declaratory judgment claims brought in the case at bar fall squarely within the type of claims the *Rooker-Feldman* doctrine bars this court from hearing.

In their response to the Motion for Summary Judgment, the Plaintiffs have argued they were the victims of extrinsic fraud committed by Jones.  (Dkt. No. 185-1.)  Whether or not a fraud exception to the *Rooker-Feldman* doctrine exists to allow a federal district court jurisdiction in this case is a matter of first impression in the Fourth Circuit.  See Almanzar v. Bank of Am., NA, No. 1:13-CV-146, 2013 WL 6893966, at *5 (M.D.N.C. Dec. 31, 2013) (holding the Fourth Circuit has not recognized a fraud exception to *Rooker-Feldman*).  District courts in South Carolina have declined to recognize a fraud exception to the *Rooker-Feldman* doctrine.  See Nelson v. U.S. Bank NA, No. 2:14-CV-1349-PMD, 2015 WL 685271 (D.S.C. Feb. 18, 2015); Patterson v. AutoZone Auto Parts, Inc., No. 0:10-2438-MBS, 2011 WL 379427 (D.S.C. Feb. 3, 2011).  This court declines to recognize a fraud exception to the *Rooker-Feldman* doctrine.  This court, following the rationale of Nelson and Patterson, does not leave the Plaintiffs without a remedy for the fraud in this case.  The proper forum for remedying the alleged fraud is in state court.  The Plaintiffs availed themselves of that forum.  The Plaintiffs' allegations of fraud were heard by the state court in the Plaintiffs' Motion to Reopen and Vacate (Dkt. No. 170-14) and were ruled on by the state court in its 2013 Order.  (Dkt. No. 185-2 at 17.)

ii.  Res Judicata

"Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." Judy v. Judy, 393 S.C. 160, 172, 712 S.E.2d 408, 414 (2011) (citation and quotation marks omitted).  "Res judicata may be applied if (1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior

11

adjudication of the issue by a court of competent jurisdiction." <u>Catawba Indian Nation v. State</u>, 407 S.C. 526, 538, 756 S.E.2d 900, 907 (2014).

In the case at bar, the Plaintiffs' quiet title claim and any equitable claims seeking to set aside the quit claim deeds conveying the property to the Nelson Trust are barred by res judicata.[3] The Plaintiffs brought the 2005 lawsuit in state court seeking quiet title.  (Dkt. No. 170-2.)  Levy Center was listed as a defendant in the caption of the Final Order.[4]  (Dkt. No. 170-3.)  After the Plaintiffs filed their "Motion to Reopen and Vacate" the Final Order, Levy Center filed a motion to intervene which was granted by the state court in the 2013 Order. (Dkt. No. 185-2.)  The Plaintiffs' causes of action in the federal case at bar to quiet title and rescind the quit claim deeds are identical to the claims heard by the state court and ruled on in the Final Order and the 2013 Order.  The state court quieted title to the three parcels at issue in the case at bar in the Final Order and denied the Plaintiffs' requests to vacate that order and void the allegedly forged quit claim deeds on account of Jones' fraud in the 2013 Order.

Having determined that the Plaintiffs' quiet title claim and claims seeking to set aside the quit claim deeds meet the three prong test to be barred by res judicata, the court must now determine if the state court judgments were based on extrinsic fraud.  Res judicata does not bar a collateral attack on a judgment based on extrinsic fraud.  <u>Mr. G v. Mrs. G</u>, 320 S.C. 305, 307, 465 S.E.2d 101, 103 (Ct. App. 1995) (citing <u>Evans v. Gunter</u>, 294 S.C. 525, 366 S.E.2d 44 (Ct. App. 1988)).  "Extrinsic fraud is 'fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.'"  <u>Chewning v. Ford Motor Co.</u>, 354 S.C. 72, 81, 579

---

[3] Res judicata does not apply to the Plaintiffs' declaratory judgment claim.  <u>Catawba Indian Nation</u>, 407 S.C. at 539, 756 S.E.2d at 908.

[4] Levy Center presumed they were listed as a defendant in the caption of the Final Order because they were an adjacent land owner.  (Dkt. No. 170-1.)

S.E.2d 605, 610 (2003) (quoting <u>Hilton Head Ctr. of South Carolina v. Public Serv. Comm'n</u>,

294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)).

> Extrinsic fraud refers to frauds which are collateral or external to the matter tried
> such as misleading acts which prevent the movant from presenting all of his case.
> It is some intentional act or conduct by which the prevailing party has prevented
> the unsuccessful party from having a fair submission of the controversy.

<u>Evans</u>, 294 S.C. at 529, 366 S.E.2d at 46.  South Carolina courts have the "inherent authority" to

set aside quiet title actions "that were procured as the result of extrinsic fraud."  <u>Robinson v.</u>

<u>Estate of Harris</u>, 389 S.C. 360, 369, 698 S.E.2d 801, 806 (2010).

The Plaintiffs' argument that they were the victims of extrinsic fraud do not succeed in

barring res judicata from applying to their quiet title claim and any equitable claims seeking to

set aside the quit claim deeds conveying the property to the Nelson Trust.  Even if Jones' actions

constituted extrinsic fraud at the time the state court action was heard originally, Jones was not

acting on behalf of the Levy Center.  <u>Evans</u> defined extrinsic fraud as being "some intentional

act or conduct by which the *prevailing party* has prevented the unsuccessful party from having a

fair submission of the controversy." <u>Evans</u>, 294 S.C. at 529, 366 S.E.2d at 46 (emphasis added).

The Plaintiffs hired Jones to represent them.  There is no evidence Jones was in anyway acting

on behalf of Levy Center.  The Plaintiffs admit Jones perpetrated his fraud to steal their money

"which he kept and used to buy expensive automobiles."  (Dkt. No. 1 at 5.)  Levy Center did not

have any role in the fraud.

Additionally, the Plaintiffs' argument that extrinsic fraud should allow collateral attack

on the state court judgments fails because they were fully heard in state court.  The Plaintiffs

filed their "Motion to Reopen and Vacate" the Final Order in state court on July 27, 2012.[5]  (Dkt.

No. 170-14.)  The motion included "the same general allegations as those set forth" in the case at

bar including that the Plaintiffs were "defrauded by their attorney, that the creation of Nelson

LLC was fraudulent, that the quitclaim deeds to the Nelson LLC and then to Levy Center, LLC

were void."  (Dkt. No. 185-2 at 19.)  The state court conducted a hearing on the motion.  In the

motion, Plaintiff Leonora Nelson asserted,

> that she was unaware that her attorney had allegedly committed fraud when handling the Quiet Title Action, that Henry Harris and Quanta Gibbs do not exist, that she was unaware the property was conveyed to the Nelson LLC, and that she did not know that three of the parcels were conveyed from Nelson LLC to Levy Center.

(Id. at 21.)  The state court considered Leanora Nelson's deposition, which was in evidence

without objection.  (Id.)  Based on the deposition, the court found the following:

> Ms. Nelson…was aware, as early as 2005, of some of the issues she raises as grounds for vacating the Final Order.  Specifically, Ms. Nelson testified that, as early as 2005, her attorney informed her of the existence of Henry Harris and Quanta Gibbs.  She further testified that she was aware of the existence of Nelson, LLC in November 2005.  Ms. Nelson became aware that some of the parcels were titled in the name of Levy Center, LLC as early as 2006.  Further, Ms. Nelson received checks from the Nelson LLC bank account in 2006 and 2007. Despite being made aware of the above facts—all of which she claims were part of the alleged fraud—in 2005 and 2006, the Plaintiff waited until 2011 to file the Federal Court Action and July 2012 to file the present Motion to Vacate.  This was a delay that was unreasonable under the circumstances of this matter.

(Id. at 22.)  The state court held that there is "no evidence Levy Center knew of any of the

alleged fraud or disputes" regarding the land it purchased from Nelson LLC.  (Id.)  The state

court ruled that the Plaintiffs' motion was denied because it was untimely under Rule 60(b) of

the South Carolina Rules of Civil Procedure,  was beyond the statute of limitations to challenge a

---

[5] The case at bar was stayed during the pendency of the state court motion.  (Dkt. No. 79.)

quiet title action under S.C. Code §15-67-90, and was barred under the doctrine of laches.  (Id. at

19-22.)

     While the Plaintiffs contend Jones' conduct was extrinsic fraud, the extrinsic fraud

exception to applying res judicata should not apply in the case at bar.  The Plaintiffs fully

litigated their case, including their claims regarding Jones' fraud, in state court.  The Plaintiffs

fully presented their case before the special referee.  Their claims were ruled on by the state

court.  They are now asking this court to essentially rehear their fraud claims that the state court

already heard. The Plaintiffs' claims for quiet title and declaratory judgment are barred by res

judicata.

### iii.  Statute of Limitations

     To the extent the Plaintiffs' claims are not barred by the *Rooker-Feldman* doctrine and

res judicata, the Plaintiffs' claims are outside of the applicable statutes of limitations as well.

The statute of limitations for challenging a quiet title action is three years.  S.C. Code Ann. § 15-

67-90.  Seeking to set aside a deed on the ground of fraud has a three year statute of limitations

as well.  S.C. Code Ann. § 15-3-530.  The Final Order was filed on September 7, 2005.  (Dkt.

No. 170-3.)  The three parcels owned by the Nelson LLC now in dispute were sold to Levy

Center in the Levy Deed recorded on September 26, 2005.  (Dkt. No. 170-9.)   The Plaintiffs

filed the case at bar on May 17, 2011. (Dkt. No. 1.)  The case at bar is outside the statute of

limitations by almost three years.

     The Plaintiffs argue that Jones committed extrinsic fraud, and therefore their claims are

still viable.  (Dkt. No. 185-1 at 7-9.)  Extrinsic fraud may preclude the application of the statute

of limitations to a challenge to a quiet title action.  Robinson v. Estate of Harris, 388 S.C. 645,

654, 698 S.E.2d 229, 235 (2010).  As discussed *supra*, extrinsic fraud generally requires an act by the prevailing party that prevented the party claiming extrinsic fraud from fully presenting their case.  As this court discussed *supra*, there is no evidence that Jones was acting on behalf of Levy Center when he defrauded the Plaintiffs.  Jones' fraud was meant to deprive the Plaintiffs, his own clients, of their property for his own gain.  The quiet title action was fully presented in state court with all of the necessary parties.  The fraud was undertaken by Jones for his own personal gain at the expense of the Plaintiffs.  No evidence exists that the adverse parties in the quiet title action, including Levy Center, took part in any fraud.

The Plaintiffs' argument that extrinsic fraud tolled the statute of limitations fails for an additional reason as well.  An action seeking to attack a quiet title action beyond the time period allowed by S.C. Code Ann. § 15-67-90 on the basis of extrinsic fraud is barred if the plaintiff had actual knowledge or could have acquired such knowledge through reasonable diligence of the alleged extrinsic fraud.  Yarbrough v. Collins, 301 S.C. 339, 391 S.E.2d 873 (Ct. App. 1990).  "If a judgment procured by extrinsic fraud could have been avoided if the challenging party exercised due diligence, a court generally will not grant relief from the judgment."  Robinson, 388 S.C. at 655 (citing Center v. Center, 269 S.C. 367, 373, 237 S.E.2d 491, 494 (1977)).  "[A]s a general rule, equity will grant no relief to one against whom an unfavorable judgment has been rendered, even in consequence of fraud, where the aggrieved party could have prevented the return of such a judgment by the exercise of proper diligence…."  Center, 269 S.C. at 373, 237 S.E.2d at 494 (internal quotation marks and citation omitted).

The extrinsic fraud committed by Jones could have been avoided if the Plaintiffs had exercised due diligence.  Voluminous evidence existed of Jones' fraud that the Plaintiffs were

16

aware of in 2005, 2006, and 2007.  As early as 2005 or 2006, Leanora Nelson was aware Jones was selling two acres of the property.  (Dkt. No. 245 at 66-67.)  Leanora Nelson noted in 2007 that despite Jones selling off two acres, the overall acreage had not changed.[6]  (Dkt. No. 245 at 73.)  The Plaintiffs assert that Quanta Gibbs and Henry Harris are fictitious person invented by Jones.  (Dkt. 185-1 at 3-4.)  Leanora Nelson testified in her deposition that Jones told her about Gibbs and Harris in 2005 or 2006, and she was suspicious as to who these people were because she had never heard of them.  (Dkt. No. 246 at 62-65.)   The Plaintiffs accepted $18,000 in the form of checks from the sale of the property in 2006.  (Dkt. No. 245 at 103; 138.)  Among the checks was one for $3000 issued at Leanora Nelson's direction on October 11, 2006 to a Washington D.C. attorney.  (Dkt. No. 245 at135-136.)  The attorney was hired by the Plaintiffs because Leanora Nelson "was becoming concerned about what was going on."  (Dkt. No. 245 at 137.)

The "concern" grew to "notic[ing] that something might be amiss" in late 2006 or 2007 when Jones' office stopped paying the taxes on the parcels sold to Levy Center.  (Dkt. No. 245 at 76.)  Leanora Nelson "made the wrong quantum leap" by believing what Jones told her regarding Levy Center was "justifiable." (Dkt. No. 245 at 70.)   Leanora Nelson was aware in 2006 that the three parcels were titled in the name of Levy Center after being informed by the tax assessor's office.  (Dkt. No. 245 at 89.)  Leanora Nelson found it "odd" that the Levy Center had a Savannah mailing address.  (Dkt. No. 245 at 104.)  In 2007, the Plaintiffs sought a phone number for the Levy Center to investigate Jones' stories, which Leanora Nelson "wanted to believe."

---

[6] Leanora Nelson's observation in 2007 that the overall acreage had not changed after Jones' told her he sold two acres is an admission she had actual knowledge Jones was not being candid with her.  She willfully ignored that his story did not add up.  Instead she was pleased he was able to sell property without reducing the amount of property she owned despite this not being possible.

(Dkt. No. 245 at 158-9.) In December of 2006, Plaintiff Selena Cecchini felt that "something sketchy was going on" and planned to call Jones. (Dkt. No. 244 at 36-37.) The Plaintiffs were fully aware that title to the parcels had been transferred and that they were paying taxes on land that was not titled in their names or in any entity they controlled. Jones told the Plaintiffs that title to the property was held by Levy Center for tax purposes. As the land was transferred to Levy Center in 2005, the tax notices would have been "missing" starting in 2006. Leanora Nelson agreed in her deposition that not receiving tax notices on the land Jones had surreptitiously sold to Levy Center raised "red flags." (Dkt. No. 245 at 93.) The Plaintiffs had actual knowledge that some of the land had been sold by Jones and that the three parcels were owned by Levy Center in 2007. (Dkt. No. 245 at 95.)

The Plaintiffs had knowledge of all of the evidence discussed above between 2005 and 2007. The Plaintiffs filed this suit on May 17, 2011. (Dkt. No. 1.) The suit was filed almost six years after the quiet title action and 4 years after the Plaintiffs knew Jones had sold land and the property was titled in the name of Levy Center. The Plaintiffs did not pursue the "red flags" until 2011. The Plaintiffs did not act diligently based on the actual knowledge they had and numerous signs the fraud was being perpetrated. The Plaintiffs argue that is because they had many things happening in their lives during this time period and did not have time to follow up on Jones' actions. (Dkt. No. 185-1 27-29.) Unfortunately, this does not excuse their lack of diligence for six years. The Plaintiffs' claims regarding the quiet title action are barred by the applicable statute of limitations.

iv.  Laches

In addition to bars under the *Rooker-Feldman* doctrine, res judicata, and the statute of limitations, the Plaintiffs' claims are barred by laches. "Laches is an equitable doctrine defined as 'neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done.'" Strickland v. Strickland, 375 S.C. 76, 83, 650 S.E.2d 465, 469 (2007) (quoting Hallums v. Hallums, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988)). To succeed in a defense of laches, "a defendant must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice to the defendant." Id. Laches may bar an action regardless of whether the action is barred by the statute of limitations. See Hagy v. Pruitt, 339 S.C. 425, 431 n.7(2000).

As discussed *supra*, the Plaintiffs did not exercise reasonable diligence to prosecute their claims. They were on notice of Jones' fraud and knew that the parcels were titled in the name of Levy Center between 2005 and 2007, yet they did not bring this case until 2011. Levy Center suffered prejudice due to the Plaintiffs' delay as they have owned the parcels since 2005 and the parcels are still subject to litigation ten years later. Levy Center was a bona fide purchaser for value without notice of the Plaintiffs' claimed interests in the parcels at the time of purchase.[7] Levy Center paid $600,000 for the property in an arm's length transaction. (Dkt. No. 170-9.) The Plaintiffs' claims are barred by laches.

 b. Negligence Claim

---

[7] "A purchaser may assert a plea in equity of a bona fide purchaser for value, without notice of defect in his title, by showing (1) he has actually paid in full the purchase money…; (2) he purchased and acquired the legal title, or the best right to it; and (3) he purchased bona fide, *i.e.,* in good faith and with integrity of dealing, without notice of a lien or defect." Spence v. Spence, 368 S.C. 106, 117, 628 S.E.2d 869, 874-75 (2006).

The Plaintiffs claim Levy Center was negligent when it purchased the three parcels from the Nelson LLC because Levy Center did not perform a title search. (Dkt. No. 1 at 10.) The Plaintiffs' claim for negligence fails because it does not state a claim, is untimely under the statute of limitations, and is barred by laches.

To succeed on a negligence claim, a plaintiff must show the following elements:

(1) defendant owes a duty of care to the plaintiff;
(2) defendant breached the duty by a negligent act or omission;
(3) defendant's breach was the actual and proximate cause of the plaintiff's injury; and
(4) plaintiff suffered an injury or damages.

Doe v. Marion, 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence." Bishop v. S. Carolina Dep't of Mental Health, 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998). "The existence of a duty owed is a question of law for the courts." Washington v. Lexington Cnty. Jail, 337 S.C. 400, 405, 523 S.E.2d 204, 206 (Ct. App. 1999).

No law exists to support that Levy Center owed a duty as a subsequent purchaser of the parcels to the Plaintiffs. While the Plaintiffs claim negligence in their Complaint, they have provided no citation to support that Levy Center owed them a duty. Levy Center was under no obligation to inquire whether the valid Final Order quieting title to the property was obtained through fraud. Additionally, as a bona fide purchaser for value without notice, Levy Center was not the proximate or actual cause of the Plaintiffs' damages. The Plaintiffs allege Jones

fraudulently took control of their land, secretly sold it off, and stole the proceeds.[8]  The

Plaintiffs' damages were caused by Jones, not Levy Center.

      In their Complaint, the Plaintiffs allege the following:

> Defendant, Levy Center, LLC which is an LLC formed in South Carolina, an LLC
> with Attorneys on retainer which [Leanora Nelson] discovered or [sic] Hunter,
> Maclean, Exley & Dunn, P.C., especially, Kirby G. Mason Esq., **had direct
> knowledge and a full understanding, that an "authorized agent" can not
> convey property in his position as an authorized agent**.

(Dkt. No. 1 at 8) (emphasis in original).  They further allege that Levy Center "actually had legal

knowledge that Horace A. Jones, Jr., who executed the deed as grantor/'authorized agent' did not

have the legal authority to convey the Nelson property to Levy Center…." (Id. at 9.)  The

Plaintiffs note in the Complaint that Jones and one of Levy Center's attorneys not involved in the

case at bar, Kirby Mason, "actually worked on the same cases clearing titles." (Id.) The

Plaintiffs ask in the Complaint "[i]s there a connection?" (Id.)  There is no evidence in this case

to support the Plaintiffs' allegations that Levy Center had any knowledge of Jones' fraud.  To the

contrary, the evidence shows that the Levy Center did not have any knowledge of Jones' fraud.

At the closing of the transaction selling the parcels to Levy Center, Jones presented a consent

form purportedly signed by the Plaintiffs, Quanta Gibbs and Henry Harris authorizing Jones to

sign the closing documents.  (Dkt. No. 170-8.)    Additionally, Levy Center paid $600,000 for the

parcels, which would be an ill-advised decision if they had knowledge they were buying the

parcels from an individual without authority to sell them.

      i.  Statute of Limitations

---

[8] The Plaintiffs do not allege Levy Center perpetrated any fraud.  See (Dkt. No. 1.)

The three year statute of limitations for a negligence claim is dictated by S.C. Code Ann. § 15-3-530(5).  Gibson v. Bank of Am., N.A., 383 S.C. 399, 405, 680 S.E.2d 778, 782 (Ct. App. 2009).  "[A]ll actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." S.C. Code Ann. § 15-3-535.  "In other words, the clock starts running when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party *might* exist."  Gibson, 383 S.C. at 406, 680 S.E.2d at 782 (emphasis added).  As discussed *supra*, the Plaintiffs had actual knowledge that title to the parcels was held by Levy Center and that some of the land had been sold between 2005 and 2007.  Plaintiff Selena Cecchini was suspicious "something sketchy was going on" in 2006.  (Dkt. No. 244 at 36-37.)  The Plaintiffs did not file this suit until 2011.  Any negligence claims the Plaintiffs now attempt to bring are barred by the statute of limitations.

ii.  Laches

As with their claims seeking title to the real property, the Plaintiffs' negligence claims are barred by laches.  Assuming *arguendo* the Plaintiffs had a cognizable negligence claim against Levy Center, the Plaintiffs neglected to pursue their claim for an unreasonable and unexplained length of time.  As discussed *supra*, the Plaintiffs did not exercise diligence prosecuting their claims despite ample knowledge and suspicion they had been injured between 2005 and 2007.  Therefore the Plaintiffs' claims are barred by the equitable doctrine of laches.

2.  Plaintiff Leonora Nelson's Motion for Summary Judgment (Dkt. No. 158.)[9]

Plaintiff Leonora Nelson's Motion for Summary Judgment "ask[s] the court **to declare void** a Final Order Partition in Kind dated September 7, 2005 which quieted title to five (5) parcels….[in] a quiet title action commenced in the Court of Common Pleas Fourteenth Judicial Circuit, Jasper County, Case No., 2005-CP-27-195."  (Dkt. No. 158 at 1) (emphasis in original).  A claim is barred by the *Rooker-Feldman* doctrine "if the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling."  Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir.1995) (quoted in Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 202 (4th Cir. 1997)).  The relief sought by the Plaintiff in her motion is the exact type of relief barred by the *Rooker-Feldman* doctrine.  The Plaintiff is requesting the state court's Final Order be voided.  As discussed *supra¸* there are no exceptions to the *Rooker-Feldman* doctrine in the Fourth Circuit for extrinsic fraud.  The Plaintiffs' challenge to the Final Order is additionally barred by the statute of limitations and laches as discussed *supra*.  Plaintiff Leonora Nelson is not entitled to a judgment as a matter of law, and this court recommends her Motion for Summary Judgment (Dkt. No. 158) be denied.

3.  "Plaintiffs Leonora Nelson Jean Nelson Lumbsy and Selena Nelson Cecchini as Rosalind Nelson's Natural Daughter and Heir at Law" motion for summary judgment (Dkt. No. 153.)

---

[9] This motion states it was filed by all three Plaintiffs.  It was only signed by Plaintiff Leonora Nelson.  As Leonora Nelson is not an attorney, she can only represent herself in this case.  See 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel….")

The Plaintiffs' motion for summary judgment seeks to set aside the two quit claim deeds that gave title of the two parcels to Nelson LLC because the quit claim deeds were signed three days before the Nelson LLC was filed with the South Carolina Secretary of State.  (Dkt. No. 153 at 1-2.)  The motion seeks to void a third quit claim deed granting interests in five parcels to the Nelson LLC as well.  (Id. at 2.)  The Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, the statute of limitations, and laches.

Assuming *arguendo* the Plaintiffs' claims are sound, if this court granted the relief sought by the Plainitiffs, it would be declaring the Final Order void.  The Final Order vested fee simple ownership in the contested parcels in the Nelson LLC.  (Dkt. No. 170-3.)  This court does not have jurisdiction to hear such a claim under the *Rooker-Feldman* doctrine.  As discussed *supra*, the Plaintiffs' claims are well outside the three year statute of limitations to challenge a conveyance and quiet title action, and their claims are barred by laches.  The Plaintiffs are not entitled to a judgment as a matter of law, and this court recommends their motion for summary judgment (Dkt. No. 153) be denied.

## CONCLUSION

Wherefore, it is RECOMMENDED that Defendant Levy Center, LLC's Motion for Summary Judgment (Dkt. No. 170) be GRANTED; Plaintiff Leanora Nelson's Motion for Summary Judgment (Dkt. No. 158.) be DENIED; and "Plaintiffs Leanora Nelson Jean Nelson Lumbsy and Selena Nelson Cecchini as Rosalind Nelson's Natural Daughter and Heir at Law" motion for summary judgment (Dkt. No. 153) be DENIED.

Signature Page Attached.

24

IT IS SO RECOMMENDED.


October 14, 2015

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).