IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

Leanora Nelson; Jean Nelson Lumsby; )
and Selena Nelson Cecchini, as )
Rosalind Nelson's Natural Daughter )
and Heir at Law, )
                 )
         Plaintiffs, )
                 )
v. )
                 )
Levy Center, LLC, )
                 )
         Defendant. )    Civil Action No. 9:11-1184-SB-BHH
_____ )
)             **ORDER**
Levy Center, LLC, )
                 )
        Third-Party Plaintiff, )
                 )
v. )
                 )
The Law Offices of Horace Jones, Esq.; )
Horace Jones; and The Wilcy R. )
Nelson Family, LLC, )
                 )
        Third-Party Defendants. )
_____ )

## PROCEDURAL HISTORY



    This case has a long and complicated history. The Plaintiffs, appearing pro se, filed

their complaint against Defendant Levy Center, LLC ("Levy Center"), on May 17, 2011,

seeking a declaratory judgment "to compel determination of claim to real property [and]

void deed." (Entry 1 at 3.) In summary, the Plaintiffs assert in their complaint that certain

tracts of their family property was sold to Levy Center without their knowledge and through

the alleged fraudulent actions of their attorney, Horace Anderson Jones, Esq. ("Jones").

    On August 11, 2011, Defendant Levy Center filed an answer and a third-party

complaint against the Law Offices of Horace Jones, Esq.; Jones; and the Wilcy R. Nelson Family, LLC.[1]  On June 18, 2002, Levy Center filed a motion for summary judgment.  The matter was referred to a United States Magistrate Judge for preliminary proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).  On December 13, 2012, the Magistrate Judge stayed this action pending the resolution of related state court proceedings.  On March 18, 2014, the Magistrate Judge lifted the stay.  Subsequently, the Magistrate Judge issued a report and recommendation ("R&R") outlining the issues and recommending that the Court deny Levy Center's initial motion for summary judgment.  This Court adopted the R&R on April 9, 2014.

Thereafter, the Court ordered the parties to participate in mediation and referred the case back to a Magistrate Judge.  On June 18, 2014, the parties participated in telephonic negotiations with the help of mediator Danny Mullis; however, the parties were unable to reach an agreement.  This Court thereafter scheduled a status conference for September 8, 2014, and notified the Plaintiffs that attorney Daniel E. Henderson, Esq., would be available to assist the Plaintiffs if necessary.  In the meantime, however, the parties filed cross-motions for summary judgment.  In light of the pending motions, the Court cancelled the status conference and again referred the case to a Magistrate Judge for consideration of the parties' motions.  Recognizing the serious legal issues, the Magistrate Judge then



appointed Nancy Bloodgood, Esq., to represent the Plaintiffs "solely for the limited purpose

---

[1] The third-party Defendants have not answered or otherwise appeared.  Defendant Jones was criminally charged in Jasper County for breach of trust with fraudulent intent, value $10,000 or more, in indictment 2014-GS-27-00319, and he was placed under interim suspension by order of the Supreme Court of South Carolina.  In October of 2015, Jones was found dead of apparent suicide.

2

of assisting the pro se parties in connection with a settlement conference in this case."
(Entry 180.) The Magistrate Judge stayed the action and informed the parties to file status
reports concerning the progress of mediation.

The parties participated in settlement discussions over the next few months, and on
March 27, 2015, the parties participated in formal mediation and appeared to completely
resolve the case. Nevertheless, on May 13, 2015, the Court received a fax from the
Plaintiffs raising concerns about the supposed settlement, and on May 20, 2015, Levy
Center filed a "motion to enforce written and signed settlement agreement."

On May 28, 2015, Magistrate Judge Mary Gordon Baker held a hearing at which
Plaintiff Leonora Nelson participated via telephone. The Magistrate Judge granted attorney
Bloodgood's motion to be relieved as counsel and ordered the parties to provide: (1) the
full deposition transcripts of Plaintiffs Leanora Nelson ("Nelson") and Selena Nelson
Cecchini ("Cecchini'); (2) a copy of a power of attorney or other legal document authorizing
someone to act on behalf of Jean Nelson Lumsby ("Lumsby"); and (3) a copy of the mutual
release. Once the requested documents were filed, the Magistrate Judge entered an R&R
on October 15, 2015, recommending that the Court deny Levy Center's motion to enforce
the settlement agreement. The Magistrate Judge also considered the parties' motions for
summary judgment and issued another R&R, recommending that the Court grant
Defendant Levy Center's motion for summary judgment and deny the Plaintiffs' motions

for summary judgment. Attached to both reports was a notice advising the parties of their
right to file written objections within 14 days of receiving the reports. No party objected to
the Magistrate Judge's R&R recommending that the Court deny Levy Center's motion to
enforce the settlement agreement, but the Plaintiffs did file objections to the R&R

addressing the parties' motions for summary judgment. These matters are now ripe for the Court's review.

## FACTUAL BACKGROUND

In 2005, Plaintiff Nelson hired third-party Defendant Jones to quiet title to five parcels of heirs' property in Jasper County, South Carolina ("the Nelson property"). According to the Plaintiffs, Jones did not tell them that he filed a declaratory judgment action to quiet title, and the quiet title action ultimately concluded with a Final Order of Partition in Kind Non-Jury Action issued by Special Referree Deborah Kane and filed with the Jasper County Clerk of Court on September 7, 2005 ("the 2005 Final Order"). The 2005 Final Order gave fee simple ownership of the five parcels to the Wilcy R. Nelson Family, LLC ("the Nelson LLC"), an LLC formed by Jones with the Plaintiffs being listed as members along with two other apparent heirs, Henry Harris ("Harris") and Quanta Gibbs ("Gibbs"). Importantly, the Plaintiffs allege that their signatures on the operating agreement for the Nelson LLC were forged. The Plaintiffs also allege that Harris and Gibbs were not heirs with any interest in the parcels and that they may be fictitious. The 2005 Final Order relied on quitclaim deeds submitted by Jones, which allegedly conveyed the Plaintiffs' interests in the property, along with the interests of Harris and Gibbs, into the Nelson LLC. According to the Plaintiffs, Jones never provided them with a copy of the 2005 Final Order.



Following entry of the 2005 Final Order and allegedly unbeknownst to the Plaintiffs, three of the five parcels owned by the Nelson LLC were sold to Levy Center by deed ("the Levy Deed") recorded on September 26, 2005. Levy Center paid $600,000.00 for the property, and Jones signed the Levy Deed, conveying the property as an "Authorized Agent" for the Nelson LLC. At the closing, Jones presented a consent form allegedly

4

signed by the Plaintiffs along with Gibbs and Harris, which authorized him to sign the closing documents. The Plaintiffs contend that their signatures were forged, that they were not notified of the sale, and that Jones kept the proceeds of the sale.

The Plaintiffs allege that throughout the quiet title action and the subsequent sale of the property to Levy Center, Jones never told them what was happening. Despite alleging that they did not discover Jones' alleged fraud until 2011, however, the Plaintiffs did have some suspicions regarding their case as early as 2006, but they continued to trust Jones. Plaintiff Nelson testified at her deposition that her "first notice that something might be amiss" was "when [Jones] stopped paying the taxes." (Entry 245 at 76.) According to the Plaintiffs, Jones' law office apparently paid the property taxes due in 2005 and 2006 on the three parcels that had been sold to Levy Center. (Id. at 73, 91-92; Entry 185-1 at 28.) The Plaintiffs allege, however, that they paid property taxes on the remaining two parcels in 2005 and 2006, and that they paid taxes on all of the parcels from 2007 through 2010. (Id.) Apparently, some time around 2006, Nelson received tax records indicating that Levy Center owned some of the property, leading to the "the beginning of [her] disquiet." (Entry 245 at 69, 72.) At her deposition, Nelson stated:



> That's when the tax records start coming in having the Levy Center name on it. And he told me that—when I called, I said, What is this Levy Center business. And he said, It's just for tax purposes, and just because the names in the area—you know, they are getting these new mailing address. And that's how I really didn't catch anything wrong. The property that my aunt had, her house, had just received a Levy Road change of address. Up to that point, she had the PO box. And they put a Levy Road address for the house.
>
> So I'm assuming it's in the same category, and that all of these addresses are being changed to this Levy Center area. You know, logically, I'm making a quantum leap. I made the wrong quantum leap. But I made the leap that what he's saying is justifiable. But in the meantime, I'm calling the tax office,

5

> because he also said to me, I'll make sure the taxes are paid. And he got back to me and said, I was able to sell a couple of acres, and you will have access to a limited amount of money. That's what he told me.

(Id. at 69-70.)

At some point in 2006 or perhaps early 2007, Nelson called the tax assessor's office and was told that three of the parcels were owned by Levy Center–which had a business address in Savannah, Georgia–and were not owned by the Nelson LLC. (Id. at 89-93.) Nelson testified that this information raised "red flags," but she accepted Jones' explanation that the parcels were in the name of Levy Center for tax purposes. (Id. at 93.)

The Plaintiffs also assert that in 2005 or 2006, Jones told them he could sell two acres to pay off Gibbs' and Harris's interests in the property. (Id. at 66-67.) Nelson asserts that she opposed the sale but told Jones that if he sold two acres, to "not touch" the land on "the highway." (Id.) According to Nelson, Jones later told her that he sold a "couple" acres; however, Nelson testified that she checked the acreage following the alleged sale, and the total acreage had not changed. (Id. 73.) Nelson further testified that she "bought the story," and assumed he had gotten money "maybe for half acre or so," and "didn't want to pull the rug from underneath him, because what I was receiving on the tax record displayed the acres the way they were." (Id.)



Throughout this time, Jones retained control of the Nelson LLC checking account, and the Plaintiffs accepted and directed the issuance of checks (signed by Jones) from the Nelson LLC account for several expenses. For example, the Plaintiffs accepted checks from the account in 2006 to pay for weddings and other expenses totaling approximately $18,000.00. (Id. at 103; 138.) Also, a check for $3,000.00 was issued from the Nelson LLC account on October 11, 2006, to an attorney in Washington D.C., Cheryle Fells, whom

Nelson had hired to research real estate law in relation to this case. (Id. at 135-138.) Nelson testified that she hired this attorney "[b]ecause [she] was becoming concerned about what was going on." (Id. at 137.)

Nelson further testified that in 2007 she sought a phone number for Levy Center from the tax assessors' office to verify Jones' representations, which she "wanted to believe," but she was not successful in getting a phone number. (Id. at 158-9.) Also, at some point a friend researched Levy Center and business entities formed by Jones, and Nelson testified that she felt the results of the research supported Jones' claim that he was setting up a real estate "consortium" under the name Levy Center. (Id.) According to the Plaintiffs, they did not recognize Jones' fraud until 2011, when Jones came to New York and told them he had "repurchased" their land from Levy Center and presented them with a check for $10,000.00, which they cashed. (Id. at 145-46.) The Plaintiffs testified that they were suspicious and traveled to South Carolina in April and determined that Jones had established the Nelson LLC without including them. (Id. at 149, 153; Entry 1 at 5.) They further contend that they did not receive a copy of the 2005 Final Order and discover that their land had been sold to Levy Center for $600,000.00 until June 2012.

The Plaintiffs initially filed suit in the Eastern District of New York, but the case was dismissed for lack of personal jurisdiction over Levy Center. (Entry 185-1 at 29.) The Plaintiffs then commenced this federal court action on May 17, 2011. On July 27, 2012, however, the Plaintiffs filed a 127-page "Motion to Reopen and Vacate" the 2005 Final  Order in the underlying state court action. (Entry 170-14.) In their motion, the Plaintiffs raised issues related to Jones' and other individuals' alleged fraud. This Court stayed the federal case pending the state court's resolution of the matter. On March 5, 2013, the

Special Referee held a hearing and denied the Plaintiffs' motion in an order dated April 12, 2013 ("the 2013 Order"). (Entry 185-2.) The Special Referee specifically found that: (1) the motion was untimely under Rule 60(b) of the South Carolina Rules of Civil Procedure; (2) the motion was barred by S.C. Code § 15-67-90, which provides for a three-year statute of limitations on actions seeking to challenge a decree or judgment quieting title to land; and (3) the motion was barred by the doctrine of laches. (Id. at 19-22.) In short, the Special Referee found that the Plaintiffs were aware in 2005 and 2006 of much of the evidence used to support their allegations of fraud, yet they waited until 2011 to file the federal case and 2012 to seek to reopen the state case.

The Plaintiffs assert that they filed a motion to reconsider in state court, but no motion was formally entered. (See Entries 102, 105, and 106.) The Plaintiffs filed an appeal with the South Carolina Court of Appeals, but in an order filed June 24, 2013, the South Carolina Court of Appeals determined that the notice of appeal had not been timely served pursuant to Rule 203(b)(1) of the South Carolina Appellate Court Rules, and the court dismissed the appeal and sent a remittitur to the Jasper County Clerk of Court. It does not appear that the Plaintiffs filed a motion for rehearing with the South Carolina Court of Appeals or an appeal to the South Carolina Supreme Court.

### STANDARDS OF REVIEW

**I.    The Magistrate Judge's R&R**



The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. Mathews v. Weber, 423 U.S. 261 (1976). The Court

is charged with making a de novo determination only of those portions of the R&R to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).  In the absence of specific objections, the Court reviews the matter only for clear error.  See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' ") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**II.    Summary Judgment**

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  All evidence should be viewed in the light most favorable to the non-moving party.  Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis."  Celotex, 477 U.S. at 327.  Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented.  Anderson,



477 U.S. at 248.

## DISCUSSION

As previously set forth, the Magistrate Judge issued two reports–the first recommending that the Court deny Levy Center's motion to enforce the settlement agreement and the second recommending that the Court grant Levy Center's motion for summary judgment and deny the Plaintiffs' motions for summary judgment. No party objected to the Magistrate's first R&R, and, after careful review, the Court finds no clear error and accepts the Magistrate Judge's recommendation.

Stated simply, the Court agrees with the Magistrate Judge for the following reasons that the parties did not reach a complete, enforceable agreement. First, although Plaintiffs Nelson and Cecchini signed the agreement, along with attorney Bloodgood, the agreement specifically required that the parties obtain the signature of Plaintiff Lumsby, which did not happen. Moreover, to the extent the Defendant asserts that Bloodgood had actual and apparent authority to bind *all* of the Plaintiffs to the settlement agreement, the Court agrees with the Magistrate Judge that the relationship between Bloodgood and the Plaintiffs was not the typical attorney-client relationship. Rather, the Plaintiffs proceeded pro se in this action until the Court sua sponte appointed Bloodgood "solely for the limited purpose of assisting the pro se parties in connection with a settlement conference." (Entry 180 at 1.) The Plaintiffs repeatedly indicated their distrust of lawyers and their desire to proceed pro se, and Bloodgood never made a full appearance. Although the Court greatly appreciates Bloodgood's efforts, the Court is not willing to bind the Plaintiffs by Bloodgood's signature  on the settlement documents. Next, the Court agrees with the Magistrate Judge that the settlement agreement was a joint undertaking, and it would make little sense to enforce the

settlement as to Nelson and Cecchini but not as to Lumbsy. Finally, the Court agrees that the Defendant is not entitled to enforce the mediation settlement agreement pursuant to the doctrine of promissory estoppel, as the Defendant has not established, among other things, an injury sustained in relying on the promise. For the foregoing reasons, the Court hereby adopts the R&R (Entry 256) and denies Levy Center's motion to enforce the settlement agreement. (Entry 208).

Next, with regard to the Magistrate Judge's second report–recommending that the Court grant Levy Center's motion for summary judgment and deny the Plaintiffs' motions for summary judgment–the Plaintiffs filed written objections, requesting the Court to reject the R&R in all respects, and the Defendant filed a response to the Plaintiff's objections. The Court will consider the Plaintiffs' specific objections to the Magistrate Judge's findings below.

As an initial matter, however, the Court notes that the Plaintiffs object numerous times to the Magistrate Judge's reliance on deposition testimony that the Defendant did not submit in support of its motion for summary judgment. The Court finds this objection to be wholly without merit, as Rule 56(c)(3) plainly permits courts to consider material in the record other than the material cited by the parties. See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but may consider other material in the record."); see also United States v. Sims, 578 F. App'x. 218, 222 (4th Cir. 2014) (unpublished) (rejecting  the defendant's contention that the court erred by considering matters not referenced in the government's memorandum in support of its motion for summary judgment, stating "[t]his contention is without merit because Federal Rule of Civil Procedure 56(c)(3) permitted the district court to consider the evidence [ ] regardless of the fact that the

11

government did not reference [it] in its initial memorandum in support of its motion for summary judgment"). The Magistrate Judge had authority to order the parties to submit complete deposition transcripts, and once properly submitted, they became "material in the record." See also Fed. R. Civ. P. 56(e) (permitting the court to "issue any other appropriate order" when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact").

The Court will now consider the Plaintiffs' specific objections to the Magistrate Judge's findings.

### I.    The Rooker-Feldman Doctrine

In her second R&R, the Magistrate Judge first determined that the Rooker-Feldman doctrine bars the Court from exercising subject matter jurisdiction over the Plaintiffs' real estate claims (for declaratory judgment, to quiet title, and to void the quitclaim deeds) because, to grant the relief sought by the Plaintiffs, which includes the return of their property, this Court would have to rule that the state court's 2005 Final Order and 2013 Order denying the Plaintiffs' motion to reopen and vacate were wrongly decided and are void, a ruling squarely precluded by the Rooker-Feldman doctrine.

In their objections, the Plaintiffs contend that the Rooker-Feldman doctrine does not bar their claims because of the acts of extrinsic fraud on the part of Jones as well as Gibbs and Harris. A review of the R&R indicates, however, that the Magistrate Judge specifically considered and rejected this argument, noting that the Fourth Circuit has not recognized a fraud exception to the Rooker-Feldman doctrine, and noting that at least two other Judges in this District have declined to recognize a fraud exception to the Rooker-Feldman doctrine. (See Entry 257 at 11 (citing Nelson v. U.S. Bank NA, No. 2:14-cv-1349-



PMD, 2015 WL 685271 (D.S.C. Feb. 18, 2015), and Patterson v. AutoZone Parts, Inc., No. 0:10-cv-2438-MBS, 2011 WL 379427 (D.S.C. Feb. 3, 2011)).); see also Almanzar v. Bank of Am. NA, No. 1-13-cv-146, 2013 WL 6893966, at *5 (M.D.N.C. Dec. 31, 2013) (holding that the Fourth Circuit has not recognized a fraud exception to the Rooker-Feldman doctrine).

Ultimately, the Court finds the Plaintiffs' objection to be without merit, and the Court agrees with the Magistrate Judge that the Rooker-Feldman doctrine bars the Court from exercising subject matter jurisdiction over the Plaintiffs' real estate claims. As the Supreme Court has indicated: "The Rooker-Feldman doctrine [ ] is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The "jurisdictional bar includes claims that are 'inextricably intertwined' with a state court judgment and precludes a district court from reviewing decisions of any level of state court." Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997).

Here, the Plaintiffs are seeking to void the 2005 Final Order issued by the state court, as well as the state court's 2013 Order denying the Plaintiffs' motion to reopen and vacate the Court's 2005 Final Order, and the Court agrees with the Magistrate Judge that any decision on the merits of the Plaintiffs' claims in this action would require the Court to review and reject the state court's decisions. Thus, it appears that the Plaintiffs' claims fall squarely within the ambit of the Rooker-Feldman doctrine, as the Plaintiffs are "seeking what in substance would be appellate review of the state judgment." See Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994); see also Curley v. Adams Creek Assocs., 409 F.

13

App'x 678, 680 (4th Cir. 2011) (unpublished) (affirming the district court's order dismissing claims to quiet title on waterfront property in North Carolina where the district court found it lacked subject matter jurisdiction pursuant to the Rooker-Feldman doctrine). Moreover, the Court declines to recognize a fraud exception to the Rooker-Feldman doctrine. See Nelson, No. 2:14-cv-1349-PMD, 2015 WL 685271, *3 (noting that the Fourth Circuit's decision in Resolute Ins. Co. v. North Carolina, 397 F.2d 586 (4th Cir. 1968), recognized a fraud exception to the doctrine of res judicata and not the Rooker-Feldman doctrine). Ultimately, the fact remains that the Plaintiffs raised the same arguments that they raise in this action when they filed their motion to reopen and vacate the state court's 2005 Final Order.[2]  The state court rejected the Plaintiff's arguments, finding that the motion was untimely pursuant to Rule 60(b) of the South Carolina Rules of Civil Procedure and that the motion was barred by the statute of limitations and laches. In asking this Court to grant

---

[2]  For example, the Plaintiffs alleged in their motion that they were seeking "to re-open, over-turn, and, or vacate the FINAL ORDER OF PARTITION, based on fraudulent and perjured acts," which they outlined in great detail. (Entry 170-14 at 3-8.)  In describing the Plaintiffs' allegations, the state court's 2013 Order provides:

> On May 17, 2011, three of the Nelson Heirs – Leanora Nelson, Jean Nelson Lumsby and Selena Cecchini (child of the deceased Rosalind Nelson) – filed a complaint against the Levy Center, LLC in the United States District Court for the District of South Carolina ("Federal Court Action").  In the Complaint filed in that action, the Plaintiffs generally allege that they were defrauded by their attorney, that the creation of the Nelson LLC was fraudulent, that the quitclaim deeds to the Nelson LLC were forged, and that the transfer of the Disputed Parcels to the Nelson LLC and then to Levy Center, LLC were void. Further, the Plaintiffs allege that Henry Harris and Quanta Gibbs–two of the heirs identified as owners of the Disputed Parcels–do not exist.

> On July 30, 2012, the Plaintiffs filed the present Motion to Vacate, and made the same general allegations as those set forth in the Federal Court Action.

(Entry 170-13 at 2-3.)

14

declaratory relief, to quiet title to the disputed land, and to void the quitclaim deeds based on the alleged fraudulent actions of Jones, Gibbs, and Harris (among others), the Plaintiffs are, in effect, seeking to take an appeal of the unfavorable state-court decision in this lower federal court, which the Court believes is precluded by the Rooker-Feldman doctrine.

## II.    Res Judicata

In the R&R, the Magistrate Judge next determined that the doctrine of res judicata also bars the Plaintiffs' quiet title claim as well as their equitable claims seeking to set aside or void the quitclaim deeds conveying property to the Nelson LLC.[3]  As the Magistrate Judge noted, the doctrine of res judicata "bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." Plum Creek Dev. Co. v. City of Conway, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) (citations omitted).  "Res judicata may be applied if (1) the identities of the parties are the same as in prior litigation, (2) the subject matter is the same as the prior litigation, and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." Catawaba Indian Nation, 407 S.C. at 538, 756 S.E.2d at 907.

Here, the Magistrate Judge first determined that the parties' identities are the same. Specifically, the Plaintiffs were named plaintiffs in the 2005 state court suit seeking to quiet title, and Defendant Levy Center was listed as a defendant in the caption of the 2005 Final Order.  Also, when the Plaintiffs filed their motion to reopen and vacate in 2012, Levy Center filed a motion to intervene, which the state court granted in its 2013 Order.



[3]  The Magistrate Judge noted that res judicata does not apply to the Plaintiffs' declaratory judgment claim, citing Catawba Indian Nation v. State of South Carolina, 407 S.C. 526, 538, 756 S.E.2d 900, 907 (2014).

Next, the Magistrate Judge noted that the Plaintiffs' claims in this action are the same as the claims heard and ruled on by the state court. The Magistrate Judge noted that the state court quieted title to the three parcels of land at issue in this case in the 2005 Final Order, and the state court denied the Plaintiffs' request to vacate that order based on the alleged fraudulent acts of Jones and others in the 2013 Order.

Having determined that the Plaintiffs' claims satisfy the three-prong test for res judicata to apply, the Magistrate Judge next considered whether extrinsic fraud existed, such that res judicata would not bar the Plaintiffs' claims. See, e.g., Aaron v. Mahl, 381 S.C. 585, 593, 674 S.E.2d 482, 486 (2009) (noting that the principle of res judicata may not apply where extrinsic fraud has been practiced to procure the judgment"). Ultimately, the Magistrate Judge determined that the extrinsic fraud exception should not apply because (1) Jones was not acting on behalf of Levy Center when he allegedly perpetrated his fraud and (2) the Plaintiffs' arguments regarding the alleged fraud were fully considered by the state court.

In their objections, the Plaintiffs assert that res judicata does not bar their claims because of the acts of extrinsic fraud by Jones, Harris, and Gibbs. In addition, the Plaintiffs assert that they were excluded from the judicial process in the 2005 quiet title action based on the fraudulent acts. They also contend that they were excluded from the judicial process in the 2013 hearing because Special Referee Kane granted Defendant Levy Center's motion to intervene, and "the court allowed the Defendant's Attorney to proceed with his oral opposition and testimony" even though the Defendant never served any opposition papers on the Plaintiffs. (Entry 264 at 3.)

As an initial matter, the Court agrees with the Magistrate Judge that the Plaintiffs'

16

claims technically satisfy the three-part test for res judicata to apply. Thus, the critical issue is whether the alleged fraudulent conduct of Jones, Harris, and Gibbs amounts to extrinsic fraud, such that res judicata should not bar the Plaintiffs' claims.

"Extrinsic fraud is 'fraud that induces a person not to present a case or deprives a person of the opportunity to be heard. Relief is granted for extrinsic fraud on the theory that because the fraud prevented a party from fully exhibiting and trying his case, there has never been a real contest before the court on the subject matter of the action.'" Chewning v. Ford Motor Co., 354 S.C. 72, 81, 579 S.E.2d 605, 610 (2003) (quoting Hilton Head Ctr. of South Carolina v. Public Serv. Comm'n, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)). As the South Carolina Court of Appeals stated in Evans v. Gunter:

> Historically, the courts have made a distinction between intrinsic fraud and extrinsic fraud. Intrinsic fraud refers to fraud presented and considered in the judgment assailed, including perjury and forged documents presented at trial. Extrinsic fraud refers to frauds which are collateral or external to the matter tried such as misleading acts which prevent the movant from presenting all of his case. It is some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy. "Relief is granted for extrinsic but not intrinsic fraud on the theory that the latter deceptions should be discovered during the litigation itself, and to permit such relief undermines the stability of all judgments."

294 S.C. 525, 529, 366 S.E.2d 44, 46 (Ct. App. 1988) (citations omitted).

In the R&R, the Magistrate Judge cited Evans, which (as set forth above) defined extrinsic fraud as "some intentional act or conduct by which the *prevailing party* has prevented the unsuccessful party from having a fair submission of the controversy." Id. (emphasis added). Because the Magistrate Judge deemed Levy Center to be the "prevailing party," the Magistrate Judge remarked that even if Jones' actions constituted extrinsic fraud for purposes of the quiet title action in 2005, Jones was not acting on behalf

17

of Levy Center, and Levy Center (as the prevailing party) did nothing to prevent the Plaintiffs from having a fair submission to the controversy. After review, the Court finds this distinction a bit misplaced. Instead, the Court agrees with the Plaintiffs that the alleged fraudulent actions of Jones in 2005–assuming the allegations to be true–effectively excluded the Plaintiffs from the initial quiet title action, such that the 2005 Final Order may well have been procured as the result of extrinsic fraud, regardless of the "prevailing party" language in Evans. The problem is, however, that the Plaintiffs returned to state court in 2012 and raised the allegations of fraud that they raise in this case, and the state court rejected those allegations. In other words, the Court believes that the allegations of extrinsic fraud on which the Plaintiffs rely to avoid the bar of res judicata are themselves barred by res judicata, insofar as the Plaintiffs raised these allegations in state court in 2012; the state court effectively rejected these allegations when it determined that the Plaintiffs' motion was barred by the doctrine of laches; and no evidence indicates that the Plaintiffs were prevented from presenting all of their case to the state court when they filed their motion to vacate. To be more specific, in the 2013 Order the state court found:

> The Plaintiff asserts that she was unaware that her attorney had allegedly committed fraud when handling the Quiet Title Action, that Henry Harris and Quanta Gibbs do not exist, that she was unaware the property was conveyed to the Nelson LLC, and that she did not know that [ ] three of the parcels were conveyed from the Nelson LLC to Levy Center.

> Levy Center introduced into evidence the deposition transcripts of Leanora Nelson and Selena Cecchini from the Federal Court Action, without objection. This testimony provided by Ms. Nelson shows that she was aware, as early as 2005, of some of the issues she raises as grounds for vacating the Final Order. Specifically, Ms. Nelson testified that, as early as 2005, her attorney informed her of the existence of Henry Harris and Quanta Gibbs. Nelson Dep. at 57; 63-65. She further testified that she was aware of the existence of the Nelson LLC in November 2005. Id. at 78. Ms. Nelson became aware that [ ] some of the parcels were titled in the name of Levy

18

> Center, LLC as early as 2006. Id. at 88-89. Further, Ms. Nelson received checks from the Nelson LLC bank account in 2006 and 2007. Id. at 135-140. Despite being made aware of the above facts–all of which she claims were part of the alleged fraud–in 2005 and 2006, the Plaintiff[s] waited until 2011 to file the Federal Court Action and July 2012 to file the present Motion to Vacate. This was a delay that was unreasonable under the circumstances of this matter.

(Entry 170-13 at 5-6.) Because the Plaintiffs are essentially asking this Court to reconsider claims already raised to and rejected by the state court (and involving the same parties), the finds that the Magistrate Judge properly concluded that the Plaintiffs' quiet title claim and their equitable claims seeking to set aside or void the quitclaim deeds are barred by res judicata.

### III.    The Statute of Limitations

In addition to the foregoing, the Magistrate Judge also determined that even if Rooker-Feldman and res judicata do not bar the Plaintiffs' claims, the applicable statute of limitations, which is three years, does. See S.C. Code Ann. §§ 15-3-530 and 15-67-90. As the Magistrate Judge noted, the 2005 Final Order was filed on September 7, 2005, and the parcels were sold to Levy center pursuant to the Levy Deed, which was recorded on September 26, 2005. The instant action was not filed until May of 2011.

In considering the statute of limitations, the Magistrate Judge also considered the issue of extrinsic fraud, which may preclude the application of the statute of limitations to a quiet title action. Ultimately, the Magistrate Judge determined that extrinsic fraud did not toll the statute of limitations in this case. First, the Magistrate Judge again noted that there is no evidence that Jones was acting on behalf of Levy Center when he defrauded the Plaintiffs, a distinction that this Court believes may be misplaced. Nevertheless, the Magistrate Judge also determined that the Plaintiffs failed to exercise due diligence, such

19

that equity should not grant relief under the circumstances.

The Plaintiffs object to the Magistrate Judge's findings, again pointing to their many allegations of fraud that effectively excluded them from the 2005 quiet title action. Rather than relying on the allegations pertaining to Jones, however, the Plaintiffs argue that Harris and Gibbs engaged in fraud, and "[t]here is no way that Plaintiffs could have discovered the several acts of fraudulent conduct Quanta Gibbs and Henry Harris engaged in during July and August 2005." (Entry 264 at 18.)

As noted by the Magistrate Judge, a claim of extrinsic fraud may successfully circumvent the statute of limitations. Robinson v. Estate of Harris, 388 S.C. 645, 658, 698 S.E.2d 229, 237 (2010). Extrinsic fraud is " 'fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.' " Hagy v. Pruitt, 339 S.C. 425, 431, 529 S.E.2d 714, 717-18 (quoting Hilton Head Ctr., 294 S.C. at 11, 362 S.E.2d at 177). "[R]elief is granted for extrinsic fraud on the theory that by reason of the fraud preventing a party from fully exhibiting and trying his case, there never has been a real contest before the court of the subject matter of the action." Chewning, 354 S.C. at 82, 579 S.E.2d at 610. However, "[i]f a judgment procured by extrinsic fraud could have been avoided if the challenging party exercised due diligence, a court generally will not grant relief from the judgment. Robinson, 388 S.C. at 655, 698 S.E.2d at 235.

Here, while the Plaintiffs may be correct that they could not have discovered the alleged conduct of Harris and Gibbs prior to the state court's 2005 Final Order, the evidence indicates that the Plaintiffs could have discovered these issues by 2006 or 2007 at the latest, had they exercised due diligence. In other words, the Court believes that the alleged fraudulent actions of Jones and the alleged fraudulent actions of Harris and Gibbs

20

are so inextricably intertwined that, for example, once the Plaintiffs learned from the tax assessor that three parcels of the property were owned by Levy Center (see Entry 245 at 93.), due diligence on their part could have uncovered the fraud, and prompt action on their part could have avoided the state court's 2013 findings.  As such, the Court is constrained to agree with the Magistrate Judge that the alleged extrinsic fraud did not toll the statute of limitations.

## IV.    Laches

The Magistrate Judge next determined that, in addition to being barred by the Rooker-Feldman doctrine, res judicata, and the statute of limitations, the Plaintiffs' claims are barred by laches.  As the Supreme Court of South Carolina stated in Robinson:

> The equitable doctrine of laches is defined as "neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." Hallums v. Hallums, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988).  "Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights." Chambers of S.C., Inc. v. County Council for Lee County, 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993). The party seeking to establish laches must show: (1) a delay, (2) that was unreasonable under the circumstances, and (3) prejudice.  Hallums, 296 S.C. at 199, 371 S.E.2d at 528.

388 S.C. 645, 656-57, 698 S.E.2d 229, 235-36 (2010).  The doctrine of laches can apply in determining whether an action is time-barred regardless of whether the action is barred by the statute of limitations and even where extrinsic fraud is established.  Id. at 656, 698 S.E.2d at 235-36 (citing Hagy, 339 S.C. at 431 n. 7, 529 S.E.2d at 717 n. 7).

Here, the Magistrate Judge determined that the Plaintiffs did not exercise reasonable diligence in prosecuting their claims, as the evidence indicates that they



discovered that the parcels were titled in the name of Levy Center between 2006 and 2007, but they did not bring this case until 2011. In addition, the Magistrate Judge determined that Levy Center has suffered prejudice because it was a bona fide purchaser that paid $600,000.00 for these parcels in an arms' length transaction in 2005, but the parcels are still the subject of litigation more than ten years later.

In their objections, the Plaintiffs assert that they did exercise due diligence after they "actually discovered" the extrinsic fraud on the part of Jones, Harris, and Gibbs. (Entry 264 at 6.) In addition, the Plaintiffs assert that whether Levy Center was a bona fide purchaser is in dispute based on Levy Center's alleged negligence, which the Court will discuss below. As to the Plaintiffs' claim that they exercised due diligence, however, the Court is inclined to agree with the Magistrate Judge that the Plaintiffs' delay in pursuing their claims was unreasonable under the circumstances. For example, although the Plaintiffs contend that they did not "actually know" of the extrinsic fraud until 2011 and 2012, a review of the depositions of Plaintiffs Nelson and Cecchini indicates that they had reason to believe as early as 2006 that something was amiss. Plaintiff Cecchini testified that, according to her notes, in December of 2006 she wrote "call bastard," which is what she had begun calling Jones based on her "feelings that something sketchy was going on." (Entry 244 at 36-37.) Despite her apparent concerns, Cecchini also testified that she did not do any further research and assumed that everything was okay. (Id. at 37.) In addition, with regard to Plaintiff Nelson, she testified that after she hired Jones to file the quiet title action in 2005, he called her to tell her he found two additional heirs, Harris and Gibbs. Nelson testified:

> Then he calls me, and he tells me these people came out of the ether, you know. And that's when I said to him, well, we need to let this bad boy go.

22

. . .

> He said, they talked about the property and they were thrilled–they were–okay. They were thrilled to find this property and that–I asked–I specifically asked him–would they like to meet with us. And he said no. And I said, I don't know who they are. I–I wanted to meet with them, because I wanted to see if there was some familiar resemblance. I was at the point of believing, maybe these people did exist. But I told him, there's no way that this woman could be–Quanta in particular, I said, there's no way. Because I remembered who, you know–I remembered that there's no way in Gibbs's line that this girl could exist. Because the name is so unusual. I would have heard this name in the history of the family. Okay. I said, I don't know about anybody named Harris.

(Entry 245 at 63-64.) More importantly perhaps, some time around 2006, Nelson received tax records indicating that some of the property was in Defendant Levy Center's name, which admittedly led to "the beginning of [her] disquiet." (Id. at 69, 72.) Nelson admitted at her deposition that she was "making a quantum leap" to believe Jones' explanation that their property was in Levy Center's name for tax purposes, even though the tax issues raised "red flags." (Id. at 93.) She also admitted that Jones told her he had sold a couple of acres, yet she was pleased to later learn from the tax assessor's office that there had been no change in the total acreage.[4] (Id. at 73.) Nelson admitted that Jones was dodging her phone calls and was "not being consistent." (Id. at 72.) In addition, Nelson testified that she hired an attorney in Washington, D.C., in October of 2006 to research law in relation to this case "[b]ecause [she] was becoming concerned about what was going on." (Id. at 137.) To pay for these services, a check for $3,000.00 was issued from the Nelson LLC account.

---

[4] As the Magistrate Judge noted, the acreage would have changed had Jones been telling her the truth, so the Plaintiff had actual knowledge that Jones was not being candid with her.

23

Ultimately, based on the foregoing, the Court agrees with the Magistrate Judge that the Plaintiffs' delay in pursuing their rights was unreasonable under the circumstances and that Levy Center has suffered prejudice as a result. Accordingly, the Court finds that the doctrine of laches bars the Plaintiffs' real estate claims.

## V.    The Plaintiffs' Negligence Claim

The Magistrate Judge next considered the Plaintiffs' allegations of negligence and determined that the Plaintiffs failed to state a plausible claim against Levy Center because Levy Center, as a subsequent purchaser, did not owe a duty to the Plaintiffs.[5] In other words, the Magistrate Judge determined that Levy Center had no obligation to investigate whether the 2005 Final Order was acquired fraudulently. In addition, the Magistrate Judge determined that Levy Center did not proximately cause the Plaintiffs' damages, but rather, it was Jones who fraudulently took control of their land, sold it, and kept the proceeds. In addition, the Magistrate Judge found no evidentiary support for the Plaintiffs' allegation that Levy Center had knowledge that Jones was acting fraudulently. Finally, the Magistrate Judge also determined that the Plaintiffs' negligence claim is barred by the three-year statute of limitations and by laches, for the reasons previously set forth.

In their objections, the Plaintiffs assert that Levy Center was not a bona fide purchaser for value without notice. (Entry 264 at 23.) The Plaintiffs point to documents that were available before the September 2005 closing, including the quitclaim deeds

---



[5] As the Magistrate Judge stated, a plaintiff alleging a negligence claim must show the following: (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered an injury or damages. <u>Doe v. Marion</u>, 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007). For whatever reason, the Plaintiffs did not sue Jones, who did owe them certain duties, for any alleged torts.

24

signed by Harris and Gibbs, and they contend that the title company did not include identifying documents needed to prove the identity of any of the parties.

As an initial matter, the Court agrees with the Magistrate Judge that the Plaintiffs' negligence claim fails because there is no evidence to indicate that Levy Center (1) owed a duty to the Plaintiffs or (2) proximately caused the Plaintiffs' damages. In other words, despite the Plaintiffs' conclusory allegations to the contrary, it appears that Levy Center was a bona fide purchaser, as there is simply no evidence to indicate that Levy Center had any knowledge of the alleged fraudulent actions of Jones, Harris, and Gibbs, which led to the state court's entry of the 2005 Final Order, and there is no evidence to indicate that Levy Center had any reason to believe that Jones did not have authority to sign the closing documents.   Moreover, the Court agrees with the Magistrate Judge that there is no evidence to indicate that Levy Center proximately caused the Plaintiffs' damages; rather, all of the evidence indicates that the alleged fraudulent actions of Jones, Harris, and Gibbs caused the Plaintiffs' damages.

Lastly, for the reasons set forth above with regard to the Plaintiffs' prior claims, the Court agrees with the Magistrate Judge that the statute of limitations and laches bar the Plaintiffs' negligence claim.  Stated simply, the evidence indicates that the Plaintiffs had actual knowledge that Levy Center owned the property in question as early as 2006 or 2007, but they did not file this action until 2011.

**VI.    The Plaintiffs' Motions for Summary Judgment**

In the R&R, the Magistrate Judge recommended that the Court deny the Plaintiffs' motions for summary judgment. First, as to Plaintiff Nelson's motion, wherein she asks the Court to declare void the 2005 Final Order, the Magistrate Judge determined that the

25

Rooker-Feldman doctrine bars the claim, for the same reasons she set forth previously in the R&R. Additionally, the Magistrate Judge determined that the Plaintiffs' challenge to the 2005 Final Order is barred by the statute of limitations and laches.

Likewise, with respect to the Plaintiffs' joint motion for summary judgment, wherein the Plaintiffs seek to set aside the quitclaim deeds that gave title of the property to the Nelson LLC, the Magistrate Judge again found the claims barred by the Rooker-Feldman doctrine, the statute of limitations, and laches.

The Plaintiffs did not specifically object to this portion of the R&R other than to object to the Magistrate Judge's findings as indicated above and to request that the Court reject the R&R in all requests and enter judgment as a matter of law in their favor. For the myriad reasons previously set forth in this order, however, the Court agrees with the Magistrate Judge that the Plaintiffs' claims fail. Accordingly, the Court finds that the Plaintiffs are not entitled to judgment as a matter of law.

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the Magistrate Judge's R&R regarding Levy Center's motion to enforce the settlement agreement (Entry 256) is adopted, and Levy Center's motion to enforce the settlement agreement (Entry 208) is denied. Next, the Magistrate Judge's R&R regarding the parties' motions for summary judgment (Entry 257) is also adopted. Thus, the Plaintiffs' objections (Entry 264) are overruled; Defendant Levy Center's motion for summary judgment (Entry 170) is granted; Plaintiff Nelson's motion for summary judgment (Entry 158) is denied; and the Plaintiffs' motion for summary judgment (Entry 153) is



26

denied.[6]

      **AND IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

March 2 9 , 2016
Charleston, South Carolina

---

[6] Assuming the Plaintiffs' allegations to be true, the Court notes that it in no way wishes to condone fraudulent conduct on the part of the Plaintiffs' attorney, or on the part of other non-parties such as Harris and Gibbs. Nevertheless, the Court also cannot ignore the Plaintiffs' failure to timely act when they realized–or when they should have realized through the exercise of due diligence–that things were amiss. The Court recognizes that the Plaintiffs have suffered, and the circumstances of this case are troubling. In light of the complicated history of this case and the difficult legal issues, the Court urged the parties on numerous occasions to explore potential settlement opportunities, and the Court even appointed counsel to assist the Plaintiffs in this regard. As previously discussed in this order, the parties were unable to reach an agreement. Finally, the Court believes that–in light of the unique circumstances of this case (including its posture and the nature of the claims asserted and the relief requested)–a ruling in the Plaintiffs' favor would require the Court to wade into matters previously and finally decided by a state court of competent jurisdiction, which the Court is both unwilling and unable to do.